[No. A095949. First Dist., Div. Five. July 29, 2002.]

DANIEL C. ROSS, Plaintiff and Appellant, v.
CREEL PRINTING & PUBLISHING COMPANY, INC., et al.,
Defendants and Respondents.

738

**COUNSEL**

The Bernstein Law Group and Marc N. Bernstein for Plaintiff and Appellant.

Sedgwick, Detert, Moran & Arnold, W. Bruce Wold, Frederick D. Baker, Kathryn H. Edwards and Cassandra T. Holman for Defendants and Respondents.

**OPINION**

**GEMELLO, J.**—Plaintiff Daniel C. Ross appeals from a judgment of dismissal following a trial court order sustaining the demurrer of defendant Creel Printing & Publishing Company, Inc., without leave to amend. We affirm the judgment.

### FACTS AND PROCEDURAL HISTORY

Plaintiff Daniel C. Ross (Ross) filed a verified complaint in the San Francisco Superior Court on March 2, 2001 against defendants Creel Printing & Publishing Company, Inc. (Creel), Gary R. Kasufkin, and Does 1 to 10. Plaintiff alleged on information and belief a single cause of action for intentional infliction of emotional distress. Plaintiff alleged that the defendants, "including on information and belief one or more attorneys whose names are not yet known but who acted on behalf of the named defendants, caused to be written" a letter informing plaintiff that certain checks sent to Creel by plaintiff in his capacity as a company CEO had been returned

unpaid, and that if plaintiff did not make good on the checks, the matter would be submitted to the Clark County, Nevada, District Attorney for legal action.[1]

Plaintiff further alleged that defendants knew, or disregarded a substantial probability, that sending the letter would "severely injure and frighten plaintiff, and cause him severe emotional distress" and that the purpose of sending the letter was to cause plaintiff such distress, and "to thereby obtain money." Plaintiff alleged that he did in fact suffer severe emotional distress as a result of receiving the letter, and that he incurred hospital and medical expenses and general damages. Plaintiff alleged that the sending of the letter constituted extreme and outrageous conduct pursuant to California statutes "criminalizing such conduct" and, as to the Doe attorney defendants, pursuant to attorneys' "ethical obligation . . . not to threaten criminal prosecution to obtain an advantage in a civil proceeding." Plaintiff sought compensatory and punitive damages.

Defendants Creel and Gary R. Kasufkin demurred to the complaint. In support of the demurrer, defendants submitted a request for judicial notice and attached a copy of a complaint filed by Creel against Ross in Clark County, Nevada; a printout of a section of the Nevada Revised Statutes; a publication of the Clark County District Attorney's Office, Bad Check Diversion Unit; and a copy of a letter to Creel from the Clark County District Attorney's Office regarding processing of the unpaid checks from Ross. Although the trial court did not explicitly rule on the request for judicial notice, the record indicates that the court did not consider the appended material in reaching its decision.

The court heard argument and on June 15, 2001, issued an order sustaining the demurrer without leave to amend. Plaintiff filed his notice of appeal on August 13, 2001.[2]

---

[1]Paragraph 1 of the cause of action for intentional tort attached to plaintiff's form complaint states in its entirety: "1. Defendants, acting individually, in conspiracy with each other, and in concert with each other, including on information and belief one or more attorneys whose names are not yet known but who acted on behalf of the named defendants, caused to be written and sent in the mail to plaintiff a letter informing him that certain checks he allegedly sent to Creel Printing Company on behalf of a company of which he was CEO, had been returned unpaid, and further informing him that 'Pursuant to NRS 205.130, issuing or passing a check, knowing that there are not sufficient funds in the account to pay the check, is a criminal offense.' The letter further stated that if plaintiff did not pay the amounts alleged to be owing, 'we will submit this matter to the Clark County District Attorney for legal action.' "

[2]Plaintiff submitted a request to augment the record on appeal on May 7, 2002, seeking to include in the record a judgment of dismissal that was entered on May 2, 2002. As we noted

## DISCUSSION

### I. *Standard of Review*

■ On appeal from a judgment of dismissal following an order sustaining a demurrer without leave to amend, we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) We assume the truth of all material facts properly pleaded, as well as facts that may be implied or inferred from those expressly alleged. (*Rose v. Royal Ins. Co.* (1991) 2 Cal.App.4th 709, 716 [3 Cal.Rptr.2d 483].) Relevant matters that are properly the subject of judicial notice may be treated as having been pled. (*Marina Tenants Assn. v. Deauville Marina Development Co.* (1986) 181 Cal.App.3d 122, 128 [226 Cal.Rptr. 321].)

### II. *Judicial Notice of Proffered Evidence*

We address evidentiary issues at the outset in order to be clear about what materials we consider in our de novo review. Defendants submitted numerous items of extrinsic evidence, which we separate into two categories: material presented as part of a proper request for judicial notice, and material presented without a request for judicial notice.

### A. *The Request for Judicial Notice*

An appellate court may consider matters that are properly the subject of judicial notice. (Evid. Code, § 459;[3] *Crowley v. Katleman* (1994) 8 Cal.4th 666, 672 [34 Cal.Rptr.2d 386, 881 P.2d 1083]; *Evans v. Pillsbury, Madison & Sutro* (1998) 65 Cal.App.4th 599, 605, fn. 5 [76 Cal.Rptr.2d 679].) By request filed in the trial court, defendants seek judicial notice of four items: (1) a copy of the complaint in an action filed by defendants against plaintiff in Clark County, Nevada District Court; (2) Nevada Revised Statutes, title 15, chapter 205, section 205.130; (3) Clark County District Attorney's Office, Bad Check Diversion Unit, Handbook for Businesses and Sample

---

under similar circumstances in *Giannuzzi v. State of California* (1993) 17 Cal.App.4th 462 [21 Cal.Rptr.2d 335], the order sustaining the demurrer is not itself appealable. (*Id.* at p. 464, fn. 2.) In that case, as in this one, the appellant noticed the absence of an appealable order during the pendency of the appeal and had a judgment of dismissal entered. He sought judicial notice of the judgment without objection from the respondent. (*Ibid.*) Here, as in *Giannuzzi*, we will deem the record augmented and "exercise our discretionary power to treat [appellant's] notice as commencing a valid appeal from the subsequent judgment. (Cal. Rules of Court, rule 2(c).)" (*Id.* at p. 465.)

[3]All statutory references are to the Evidence Code unless otherwise stated.

10-Day Notice Letter attached thereto; and (4) initial processing of claim letter dated February 15, 2001, Office of the District Attorney, Bad Check Division, Clark County. We address each in turn.

### 1. *The Clark County Complaint*

■ Section 452, subdivision (d)(2) permits judicial notice of the records of "any court of record of the United States or of any state of the United States." (§ 452, subd. (d)(2).) Defendants seek judicial notice of an uncertified copy of a complaint filed in the District Court of Clark County, Nevada, entitled *Creel Printing & Publishing Co. v. Woodford Publishing, Inc.*

· We decline to take judicial notice of the complaint because the document offered is neither certified nor provided under subpoena from the Nevada court, and we have no assurance of its authenticity. "[W]hen a party desires the appellate court to take judicial notice of a document or record on file in the court below the parties should furnish the appellate court with a copy of such document or record certified by its custodian." (*People v. Preslie* (1977) 70 Cal.App.3d 486, 495 [138 Cal.Rptr. 828]; see also *Goshgarian v. George* (1984) 161 Cal.App.3d 1214, 1225 [208 Cal.Rptr. 321]; *In re Terry E.* (1986) 180 Cal.App.3d 932, 937, fn. 3 [225 Cal.Rptr. 803].) It is the burden of the party seeking judicial notice to demonstrate a reason for the failure to furnish certified copies. (*People v. Preslie, supra,* 70 Cal.App.3d at p. 495, fn. 8.)

However, even if the document were properly certified, we would take judicial notice only as to the existence of the complaint, not as to the truth of any of the allegations contained in it. (*Day v. Sharp* (1975) 50 Cal.App.3d 904, 914 [123 Cal.Rptr. 918].) As defendant acknowledged at oral argument, the fact that defendant filed a complaint against the plaintiff in another court is not relevant to our analysis here.

### 2. *The Nevada Revised Statutes*

Nevada Revised Statutes, title 15, chapter 205, section 205.130, may be judicially noticed pursuant to section 452, subdivision (a) as "statutory law of [a] state of the United States . . ." (§ 452, subd. (a).) The statute is relevant to our review, as discussed in part III below, and we take judicial notice.

### 3. *The District Attorney Handbook*

■ Defendants argue without citation to authority that because the Clark County District Attorney's Office is empowered to prosecute consumer

fraud claims, its Bad Check Diversion Unit Handbook for Businesses (the handbook) comes under the rubric of a "[regulation or] legislative enactment[] issued by or under the authority of the United States or any public entity in the United States" and thus may be subject to judicial notice. (§ 452, subd. (b).) Defendants offer no basis for this assertion. The burden is on the party seeking judicial notice to provide sufficient information to allow the court to take judicial notice. (*Willis v. State of California* (1994) 22 Cal.App.4th 287, 291 [27 Cal.Rptr.2d 413] [court refused to take judicial notice of State Administrative Manual where certified copies were not provided and plaintiff failed to demonstrate manual's legal effect].) Defendant has not provided any information about the source, purpose, or official ratification of the handbook. We see no evidence that it is a regulation or legislative enactment so as to come under section 452, subdivision (b). We decline to take judicial notice.

### 4. *The February 15, 2001 Letter to Creel from the District Attorney*

There is no basis for taking judicial notice of the letter dated February 15, 2001, in which the Clark County District Attorney acknowledges receipt of checks submitted by defendants for prosecution. The document does not fall into any of the categories for either mandatory or permissive judicial notice under section 451 or 452.

### B. *The Materials Presented Without a Request for Judicial Notice*

■ Defendants attached sample "bad check report" forms and letters to their reply brief in support of the demurrer, and referred the trial court to several Web sites they contended contained additional information regarding bad check programs in San Francisco and other jurisdictions. None of these documents or references is a proper subject of either mandatory or permissive judicial notice. Further, defendants have not complied with the applicable rules for seeking judicial notice on either the trial court or the appellate level as to these materials. We do not consider the material. Neither do we consider the letter that was attached to the respondent's brief in blatant disregard of both the Evidence Code provisions governing judicial notice and the California Rules of Court. (§ 450 et seq.; Cal. Rules of Court, rules 14(d), 41.5.)

### III. *Plaintiff's Cause of Action for Intentional Infliction of Emotional Distress*

■ The elements of a cause of action for intentional infliction of emotional distress are well settled. A plaintiff must allege that (1) the defendant

engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, severe emotional distress to the plaintiff; (2) the plaintiff actually suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual and proximate cause of the emotional distress. (*Cervantez v. J. C. Penney Co.* (1979) 24 Cal.3d 579, 593 [156 Cal.Rptr. 198, 595 P.2d 975].) " 'Whether treated as an element of the prima facie case or as a matter of defense, it must also appear that the defendants' conduct was unprivileged.' " (*Ibid.,* citing *Fletcher v. Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 394 [89 Cal.Rptr. 78, 47 A.L.R.3d 286] (*Fletcher*).)[4]

 This case turns, and is resolved, on the question of whether the conduct alleged was extreme and outrageous. To be outrageous, conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." (*Cervantez v. J. C. Penney Co., supra,* 24 Cal.3d at p. 593.) In the context of debt collection, courts have recognized that the attempted collection of a debt by its very nature often causes the debtor to suffer emotional distress. (*Bundren v. Superior Court* (1983) 145 Cal.App.3d 784, 789 [193 Cal.Rptr. 671] (*Bundren*).) "Frequently, the creditor intentionally seeks to create concern and worry in the mind of the debtor in order to induce payment." (*Ibid.*) Such conduct is only outrageous if it goes beyond " 'all reasonable bounds of decency.' " (*Ibid.*)

Plaintiff's argument on appeal, like his argument below, relies exclusively on *Kinnamon v. Staitman & Snyder* (1977) 66 Cal.App.3d 893 [136 Cal.Rptr. 321] (*Kinnamon*), disapproved on other grounds in *Silberg v. Anderson* (1990) 50 Cal.3d 205, 219 [266 Cal.Rptr. 638, 786 P.2d 365). The plaintiff in *Kinnamon* filed a complaint against four defendants, alleging that three of the defendants were California attorneys retained by the fourth defendant to assist him in collecting payment of a $250 check that plaintiff had given to the defendant and that had been dishonored for insufficient funds. (*Kinnamon, supra,* 66 Cal.App.3d at p. 895.) The attorneys sent Kinnamon a letter in an attempt to collect the debt. The letter advised the plaintiff that " 'to issue a check with insufficient funds to cover said check is a misdemeanor,' " but did not inform her that fraudulent intent was also an element of the crime. (*Ibid.*)

---

[4]The assertion of an economic interest in good faith is privileged, even if it causes emotional distress. (*Fletcher, supra,* 10 Cal.App.3d at p. 395; *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 888 [6 Cal.Rptr.2d 151].) In debtor/creditor cases, the privilege is qualified, in that it can be vitiated where the creditor uses outrageous and unreasonable means in seeking payment. (*Symonds v. Mercury Savings & Loan Assn.* (1990) 225 Cal.App.3d 1458, 1469 [275 Cal.Rptr. 871].) Since we hold that plaintiff's allegations fail to meet the standard of outrageous conduct required to state a claim, it is not necessary for us to reach the privilege issue either under the economic interest theory or the litigation privilege theory of Civil Code section 47, subdivision (2), which is not raised by the parties in any event.

The Second District, in a divided opinion, reversed the judgment of dismissal following the sustaining of a demurrer without leave to amend. (*Kinnamon, supra,* 66 Cal.App.3d at p. 894.) The court held that the conduct alleged in the complaint, if true, violated former rule 7-104 of the Rules of Professional Conduct, which prohibited attorneys from making threats of criminal prosecution to gain advantage in a civil proceeding.[5] On that basis, the court concluded that the behavior was "of such an extreme nature as to be 'outrageous.' " (*Kinnamon,* at p. 896.)

Plaintiff has not alleged, nor offered to amend to allege, that the Doe defendant attorneys are practicing law in California or are bound by the California Rules of Professional Conduct. Even if the complaint were amended to so allege, we are not persuaded by the *Kinnamon* court that an allegation that defendant attorneys violated an ethical rule is sufficient to satisfy the element of outrageous conduct necessary to state a cause of action for intentional infliction of emotional distress. In cases decided both before and after *Kinnamon,* appellate courts have held that a violation of the Rules of Professional Conduct does not, in and of itself, render an attorney liable for damages. (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1097 [41 Cal.Rptr.2d 768], citing Rules Prof. Conduct, rule 1-100 and *Noble v. Sears, Roebuck & Co.* (1973) 33 Cal.App.3d 654, 658 [109 Cal.Rptr. 269, 73 A.L.R.3d 1164].)

Indeed, Rules of Professional Conduct, rule 1-100 as approved in 1988 (11 years after the *Kinnamon* decision) now expressly states: "These rules are not intended to create new civil causes of action. Nothing in these rules shall be deemed to create, augment, diminish, or eliminate any substantive legal duty of lawyers or the non-disciplinary consequences of violating such a duty." (Rules Prof. Conduct, rule 1-100(A) [eff. Nov. 28, 1988, operative May 27, 1989].) The former rule 1-100 did not include this provision. (Rules Prof. Conduct, rule 1-100 approved by order of Supreme Court, eff. Jan. 1, 1975, repealed by Supreme Court Nov. 28, 1988, operative May 27, 1989.)

There is no independent cause of action for the breach of a disciplinary rule. (*Mirabito v. Liccardo* (1992) 4 Cal.App.4th 41, 45-46 [5 Cal.Rptr.2d 571].) While the rules may provide standards of conduct for attorneys, they do not alone support a claim for damages. (See *Stanley v. Richmond, supra,* 35 Cal.App.4th at p. 1097.) By its holding, the majority in *Kinnamon* used Rules of Professional Conduct, former rule 7-104 for just that purpose. We quote in its entirety the relevant language in the opinion: "Here the first

[5]Former rule 7-104 provided in pertinent part: "A member of the State Bar shall not threaten to present criminal, administrative or disciplinary charges to obtain an advantage in a civil action . . . ." The substance of former rule 7-104 is now contained in rule 5-100.

amended complaint alleges outrageous conduct on the part of the attorney defendants acting as agents of defendant O'Cana. Rule 7-104 of the California Rules of Professional Conduct states in pertinent part: 'A member of the State Bar shall not threaten to present criminal, administrative or disciplinary charges to obtain an advantage in a civil action. . . .' Thus, the conduct charged in the complaint is of such an extreme nature as to be 'outrageous.' [Citations.]" (*Kinnamon, supra,* 66 Cal.App.3d at p. 896.) There is no analysis. The court relied on former rule 7-104 as the basis for a cause of action for intentional infliction of emotional distress, without addressing the nature of the conduct or the applicable standards for outrageousness. *Kinnamon* is alone in holding that an allegation that the rule has been violated will suffice, without more, to support a claim of outrageous conduct. We respectfully disagree with the majority in *Kinnamon.* The reasoning of the strongly argued dissent is persuasive. The dissent concluded that the Rules of Professional Conduct "were promulgated by the members of the State Bar primarily as ethical guidelines for its members . . . intended to operate as a shield to protect the public from unethical conduct by attorneys but not as a sword to be used to recover money damages . . . ." (*Kinnamon, supra,* 66 Cal.App.3d at p. 901 (dis. opn. of Hanson, J.).) The dissent concluded that "a violation of Rule 7-104, standing alone, is not a legal basis for a civil action by a private citizen seeking money damages for intentional infliction of emotional distress." (*Id.* at p. 902.) We agree.

Further, *Kinnamon* is distinguishable from the instant case on its facts. The letter plaintiff received in *Kinnamon* misstated the elements of the crime of issuing a check without sufficient funds to cover it, by failing to include the requirement that the plaintiff have fraudulent intent in passing the bad check. (*Kinnamon, supra,* 66 Cal.App.3d at p. 895.) Here, the complaint reveals that the letter at issue stated that "issuing or passing a check, knowing that there are not sufficient funds in the account to pay the check, is a criminal offense." Under Nevada Revised Statutes, section 205.130, this is a correct statement of the law. (Nev. Rev. Stat., § 205.130.)[6]

In other debtor/creditor cases, outrageous conduct has been found where a creditor contacted the plaintiff by calling her neighbor at 11:00 p.m. and having the plaintiff summoned on the ground the call constituted an emergency, only to harass her about a nonexistent debt (*Bowden v. Spiegel, Inc.* (1950) 96 Cal.App.2d 793, 794 [216 P.2d 571]); where a bank called the elderly plaintiff daily to threaten to attach her bank accounts and pressure

---

[6]Nevada Revised Statutes section 205.130 provides in pertinent part: "a person who willfully, with an intent to defraud, draws or passes a check or draft . . . [¶] . . . [¶] when the person has insufficient money, property or credit with the drawee of the instrument to pay it in full upon its presentation, is guilty of a misdemeanor."

her into signing a promissory note (*Symonds v. Mercury Savings & Loan Assn., supra,* 225 Cal.App.3d at p. 1469); and where a medical center contacted a plaintiff while she was a patient there recovering from surgery and harassed her about how she would pay her uninsured medical expenses. (*Bundren, supra,* 145 Cal.App.3d at p. 788.)

In *Bundren,* the court recognized that "in a society greatly dependent upon the extension of credit, it is important that a creditor be allowed a certain degree of freedom in demanding payment." (*Bundren, supra,* 145 Cal.App.3d at p. 789.) Similarly in *Girard v. Ball* (1981) 125 Cal.App.3d 772 [178 Cal.Rptr. 406], the court affirmed summary judgment in favor of the defendant creditor, holding that his efforts to collect on the debt were not extreme and outrageous because they were consistent with common business practices. (*Id.* at p. 787.) The mailing of two letters and the making of some telephonic requests for payment did not "even hint at the kind of conduct" required to establish outrageousness. (*Ibid.*)

On appeal, plaintiff does not direct us to any allegation that he was particularly vulnerable to emotional distress, that defendants took advantage of his susceptibility, or that defendants acted in an outrageous and unreasonable manner in seeking payment. Plaintiff relies entirely on the alleged violation of the California Rules of Professional Conduct by Doe defendants.

■ If any element of a cause of action is negated, a demurrer to the cause of action is properly sustained. (*Cantu v. Resolution Trust Corp., supra,* 4 Cal.App.4th at p. 880.) ■ We conclude that plaintiff's complaint fails to state a cause of action for intentional infliction of emotional distress because the conduct alleged is not outrageous.

IV. *Leave to Amend*

■ It is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) The plaintiff has the burden of demonstrating abuse of discretion by showing how the complaint can be amended to state a cause of action. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1] (*Hendy*).) The burden is on the plaintiff to demonstrate the manner in which the complaint can be amended. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349-350 [134 Cal.Rptr. 375, 556 P.2d 737].) The plaintiff can make this showing to the appellate court whether or not he made it to the trial court. (*Roman v. County of Los Angeles* (2000) 85 Cal.App.4th 316, 322 [102 Cal.Rptr.2d 13].)

■ In this case plaintiff contends that "because [he] can properly allege all of the relevant facts of the *Kinnamon* case, he should be entitled to clarify or amplify any necessary points." This vague proffer is unavailing as we are unpersuaded that *Kinnamon* is controlling authority in this case. Plaintiff also notes that the trial court expressed a concern about whether the letter complained of was addressed to Ross personally, or to his company, and asserts that he could amend his complaint to allege that it was directed to Ross personally. Because we find the distinction immaterial, the suggested amendment would not alter our analysis.

In *Hendy,* the trial court sustained a demurrer without leave to amend, and the plaintiff suggested that if granted leave to amend he would change an allegation that the defendant was an employee to an allegation that he was an independent contractor; the appellate court noted that the plaintiff had not demonstrated that he had since discovered a factual basis for making a different allegation. (*Hendy, supra,* 54 Cal.3d at p. 743.) Here, plaintiff has not apprised the court of any new information that would contribute to meaningful amendments, and his generalized assertion that his complaint can be amended so that his allegations more precisely match those of *Kinnamon* does not suffice to meet his burden of demonstrating that he can plead each element of the cause of action.

The essential defect in plaintiff's complaint, the failure to allege facts that will support a claim of outrageous conduct, is not subject to a curative amendment. The trial court did not abuse its discretion in refusing leave to amend.

### DISPOSITION

The judgment of dismissal is affirmed.

Jones, P. J., and Stevens, J., concurred.