Filed 4/17/13  Cabanilla v. Wells Fargo Bank CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| WILEHADO T. CABANILLA, | |
| Plaintiff and Appellant, | E055041 |
| v. | (Super.Ct.No.  CIVDS1006067) |
| WELLS FARGO BANK, N.A., | **OPINION** |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Donna G. Garza, Judge.  Affirmed in part and reversed in part.

Wilehado T. Cabanilla, in pro. per., for Plaintiff and Appellant.

Kutak Rock, Jeffrey S. Gerardo, Steven M. Dailey, and Antoinette P. Hewitt for Defendant and Respondent.

Defendant Wells Fargo Bank, N.A., foreclosed on a trust deed after plaintiff allegedly defaulted on payment of a promissory note.  Plaintiff Wilehado T. Cabanilla sued for wrongful foreclosure and intentional infliction of emotional distress.  The trial

1

court entered an order granting defendant's demurrer to a second amended complaint. Plaintiff appeals from a judgment entered after the demurrer was sustained.

Plaintiff contends the trial court erred because (1) the original promissory note was extinguished by a modified loan agreement; (2) the notice of default on the original promissory note was void; (3) the trustee had no authority to foreclose the trust deed for nonpayment of the original note; (4) the notice of default was in violation of Civil Code section 2923.5[1]; and (5) the foreclosure sale was void, and the court therefore lacked authority to require plaintiff to tender past due payments and to post a bond.

In addition, plaintiff argues that the trial court erred in sustaining a demurrer to a second cause of action for intentional infliction of emotional distress.

We reverse the judgment from the order granting the demurrer on the wrongful foreclosure cause of action, and we affirm the trial court's order granting the demurrer on the intentional infliction of emotional distress cause of action.

I

STANDARD OF REVIEW

A demurrer is used to test the sufficiency of the factual allegations of the complaint to state a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) The facts pled are assumed to be true, and the only issue is whether they are legally sufficient to state a cause of action.

---

[1] Unless otherwise indicated, all further statutory references are to the Civil Code.

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

II

ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

AND PROCEDURAL HISTORY

The second amended complaint attempts to state a cause of action for wrongful foreclosure and a cause of action for intentional infliction of emotional distress. As noted above, we assume the facts stated in the complaint are true.[2] The only question is the legal sufficiency of the facts pleaded.

---

[2] A number of documents were attached to the second amended complaint. We also consider them to be factually true for purposes of the demurrer.

3

Plaintiff borrowed $364,000 from "First Franklin, a Division of Nat. City Bank of In" [*sic*] on May 10, 2006. The note was an adjustable rate note, payable with interest only for the first two years. It was secured by a deed of trust on plaintiff's residence.

At some point, defendant became the beneficiary of the note and deed of trust. By letter dated August 5, 2009, defendant, doing business as America's Servicing Company, formally offered to modify and restructure the loan. A proposed loan modification agreement was enclosed with the letter. The primary change was from an adjustable interest rate of 7.25 percent to a fixed rate of 5 percent.

Plaintiff signed and returned the loan modification agreement on August 26, 2009. He paid the first payment on the due date, October 1, 2009. He also made the November payment, on October 30, 2009. The payments were accepted by defendant.

Nevertheless, in November 2009, NDEx West LLC (NDEx), acting on behalf of defendant, dba America's Servicing Company, notified plaintiff that he was in default on the original 2006 loan. NDEx requested payment of $42,838.94 within 30 days. Plaintiff responded by forwarding a copy of the modification agreement. NDEx forwarded the response to defendant. Plaintiff then made the December 2009 and January 2010 payments.

Despite the payments, defendant recorded a notice of default and election to sell under the deed of trust on January 12, 2010. The notice contained a declaration pursuant to section 2923.5. The trustee's sale was set for May 6, 2010.

4

We will continue with the procedural history, although not all of it is included in the complaint. The court file in our record shows that plaintiff filed suit on May 4, 2010. Plaintiff also requested a preliminary injunction. The preliminary injunction was granted on September 13, 2010, on condition that plaintiff post a bond and deposit funds totaling $34,517.88. The order stated that if the deposit and monthly payments were not made, defendant could proceed with foreclosure. On October 19, 2010, the preliminary injunction order was vacated because the required sums had not been deposited.

Defendant demurred to plaintiff's complaint on grounds of uncertainty on August 31, 2010. The first amended complaint was filed on October 29, 2010, and another demurrer was filed on November 18, 2010. The demurrer to the first amended complaint was heard on February 9, 2011, and decided March 7, 2011. The demurrer was sustained as to the emotional distress cause of action and overruled as to the wrongful foreclosure cause of action. The court's minute order states, "court deems the original notice of default null and void" and "court finds plaintiff was not in default at the time the original notice of default was recorded. Defendant bank should start the foreclosure process again and comply with Civil Code [section] 2923.5."[3] (Capitalization omitted.)

---

[3] The court said, "The Court further finds that the plaintiff was not in default at the time the original notice of default was recorded, therefore, the notice of default is void in this matter. . . . [¶] . . . [¶] I will go on further to say in this matter that the plaintiff is basically in default now of the loan in this matter. The bank is going to have to start the foreclosure process again. And I would recommend that the bank comply with Civil Code 2923.5 in this matter."

Despite the court's order, a trustee's sale was held two days later, on March 9, 2011. The property was conveyed to Deutsche Bank National Trust. A notice to vacate property was then sent to plaintiff, together with a three-day notice to quit.

Plaintiff filed his second amended complaint on April 7, 2011. Defendant filed another demurrer on May 12, 2011. Hearing was held on June 23, 2011. The court sustained the demurrer on the emotional distress cause of action without leave to amend and continued the hearing for further briefing on the wrongful foreclosure cause of action.

The continued hearing was held on July 27, 2011. The court ruled: "The court does find that tender is required based on the California 'Aceves' case. Plaintiff states that his last payment was 1-4-2010 and defendant confirms that there have been no payments for the last 18 months. [¶] The court determines that the loan modificati[o]n is part of the original note/loan agreement. [¶] Plaintiff is ordered to post a bond in the amount of $50,000.00 within 30 days."

A subsequent hearing was held on September 14, 2011. The court found that plaintiff had failed "to tender and, for that reason, sustained the Demurrer to this cause of action without leave [to] amend." A motion for reconsideration was heard and denied on October 13, 2011. Notice of appeal was filed on November 10, 2011, and an amended notice of appeal was filed on November 18, 2011.

6

### III

### ISSUES

Two primary issues are apparent from the allegations of the complaint and the procedural history.

First, we note that the trustee's sale occurred on March 9, 2011, only two days after the court had found the notice of default to be void and ordered defendant to "start over" with a notice of default that complied with section 2923.5.[4] The question presented is whether these alleged facts are by themselves sufficient to support a cause of action for wrongful foreclosure.

The second issue is whether, based on the facts alleged in the complaint, the trial court abused its discretion in ordering plaintiff to deposit substantial sums in court and to post a $50,000 bond. Having made such orders, the trial court sustained the demurrer without leave to amend when the deposits were not made.

After considering these issues, we will discuss the sustaining of the demurrer as to the intentional infliction of emotional distress cause of action.

### IV

### DISCUSSION

"'A nonjudicial foreclosure sale is accompanied by a common law presumption that it "was conducted regularly and fairly." [Citations.] This presumption may only be

---

[4] By its terms, the statute was repealed as of January 1, 2013. The fact of repeal does not excuse the alleged failure of the defendant to follow the statute while it was in effect.

rebutted by substantial evidence of prejudicial procedural irregularity. [Citation.] The "mere inadequacy of price, absent some procedural irregularity that contributed to the inadequacy of price or otherwise injured the trustor, is insufficient to set aside a nonjudicial foreclosure sale. [Citations.]" [Citations.] It is the burden of the party challenging the trustee's sale to prove such irregularity and thereby overcome the presumption of the sale's regularity.' [Citation.] In addition, under section 2924, there is a conclusive statutory presumption created in favor of a bona fide purchaser who receives a trustee's deed that contains a recital that the trustee has fulfilled its statutory notice requirements. [Citation.]" (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, fn. omitted.)

In discussing its earlier case of *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, the *Lona* court said, "In that case, we addressed two grounds for setting aside the trustee's sale: (1) alleged irregularity in the procedure coupled with inadequate price and (2) the lender's alleged breach of an oral agreement to postpone the trustee's sale. [Citation.] Other grounds for setting aside a trustee's sale in the case law include assertions that no breach occurred, that the borrower was not in default, *that the deed of trust was* void, that the sale was the result of sham bidding or an attempt to restrict competition in bidding, or that the trustee did not have the power to foreclose. [Citations.]" (*Lona v. Citibank, N.A., supra,* 202 Cal.App.4th at p. 106, italics added.) Of significance here, the court also held that "no tender will be required when the trustor

is not required to rely on equity to attack the deed because the trustee's deed is void on its face. [Citation.]" (*Id.* at p. 113.)

At the hearing of July 27, 2011, after obtaining further briefing on the issue, the trial court apparently decided that the deed obtained through the foreclosure sale was voidable, not void, and it therefore decided that tender was required, citing *Aceves v. U.S. Bank, N.A.* (2011) 192 Cal.App.4th 218. Since tender had not been made, the demurrer was sustained.

In *Aceves*, the bank foreclosed on plaintiff's home. Plaintiff sued the bank, and the bank demurred. (*Aceves v. U.S. Bank*, *supra*, 192 Cal.App.4th at p. 224.) The trial court sustained the demurrer, and the appellate court reversed in part. (*Id.* at p. 225.) It held that plaintiff had pleaded causes of action based on collateral estoppel and fraud. Plaintiff's other claims, based on alleged irregularities in the foreclosure process, were rejected. (*Id.* at pp. 232.) The court found no irregularities justifying relief and thus did not reach the issue of whether the sale was void or voidable. (*Id.* at p. 231.) Nor did the court discuss the issue of tender. Accordingly, the case is not helpful on the issues presented here.

Plaintiff contends that the foreclosure sale was void, and tender is only required when the sale is voidable, not when it is void.

Plaintiff cites *Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868. In that case, decided on summary judgment, the plaintiff claimed a foreclosure sale by a prior trustee was void because of an earlier substitution of trustee. (*Id.* at p. 871.) The trial

9

court granted defendants' summary judgment motion. (*Id.* at p. 873.) The appellate court reversed. Since defendant failed to follow the statutory procedure for the substitution of trustees, the sale was void. The case was reversed with directions to quiet title in plaintiff. (*Id.* at pp. 878-879.)

The court commented that Dimock was not required to rely on equity in seeking to set aside a voidable deed. "Because Dimock was not required to rely upon equity in attacking the deed, he was not required to meet any of the burdens imposed when, as a matter of equity, a party wishes to set aside a voidable deed. [Citation.] In particular, contrary to the defendants' argument, he was not required to tender any of the amounts due under the note." (*Dimock v. Emerald Properties*, *supra*, 81 Cal.App.4th at p. 878.)

Plaintiff argues that the foreclosure sale in this case is also void because it failed to comply with statutory procedures: it was not supported by a valid notice of default, and it was conducted in violation of the trial court's order to "start over."

Defendant distinguishes *Dimock* by arguing that the sale here was voidable, not void, and that tender is therefore required. It cites *Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1358. That case helpfully discusses the meaning of "void" and "voidable" and collects the various cases. Defendant quotes the following passage: " . . . '[Defects] and irregularities in a sale under a power render it merely voidable and not void . . . . However, substantially defective sales have been held void where the defect lay in a particular as to which the statutory provision was regarded as mandatory . . . .' [Citation.]" (*Id*. at p. 1358.)

10

The *Little* court concluded: "In sum, this case involves a serious notice defect which was directly prejudicial to individuals who could reasonably have relied on the statutory notice requirements for protection of their interests; a prompt halt to completion of the transaction as soon as the notice defect became evident; and an immediate restoration of the parties to the status quo, including payment of interest to the purported buyer for the time during which his money was unavailable to him for his use. No conclusive presumption has arisen which would prevent any party from challenging the giving of proper notice. Under all these circumstances, the trial court properly declared the purported sale to be void." (*Little v. CFS Service Corp., supra*, 188 Cal.App.3d at p. 1361; see generally 1 Bernhardt, Cal. Mortgages, Deeds of Trust and Foreclosure Litigation (Cont.Ed.Bar) §§ 7.67 – 7.67C.)

Turning to plaintiff's argument in the present case, there are at least two prejudicial defects in the sale.[5] First, there was no notice of default to support the sale. As noted above, the trial court found that the prior notice of default was "null and void," that defendant should "start over" in the foreclosure process by filing a new notice of default, and that compliance with section 2923.5 was recommended.

Nevertheless, the defendant proceeded with a foreclosure sale only two days after the March 7 hearing. No new notice of default was recorded, and the statutory

---

[5] Since we find that the sale here was void, not voidable, a showing of prejudice was not necessary. However, prejudice was clearly present in this case. (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76 [premature notice of sale did not result in prejudice and did not invalidate the foreclosure sale].)

three-month waiting period was ignored.  (§ 2924, subd. (c).)  The plaintiff therefore had no opportunity to make a presale attack on a new notice of default.  The purpose of the waiting period is to allow opportunity for just such an attack.

"A foreclosure sale must be predicated on a valid, material default in the obligation secured.  It is axiomatic that the breach for which a lender seeks to foreclose must in fact constitute a default under the terms of the note and the deed of trust.  The trustor's failure to make timely payments of principal and interest, as and when due under the terms of the promissory note, ordinarily constitutes a sufficiently material default under the deed of trust to permit foreclosure.  However, particular attention must be given to any notice or grace periods provided by the deed of trust before declaring the obligation to be in default."  (2 Bernhardt, Cal. Mortgages, Deeds of Trust and Foreclosure Litigation, *supra*, § 12.141.)

The primary problem in the present case is that the defendant did not comply with statutory procedures for a foreclosure action.  The sale lacked a valid notice of default, as required by section 2924, and the defendant did not give plaintiff the requisite statutory time to attack the proposed foreclosure sale as required by section 2924, subdivision (c).  These were clearly prejudicial statutory violations that voided the foreclosure sale.  The lack of compliance with section 2935.5 is an additional but less clear statutory violation.

The leading case on section 2935.5 is *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208.  The case generally held that section 2935.5 may be enforced by a

12

private right of action, but the remedy is limited to obtaining a postponement of an impending foreclosure sale to permit the lender to comply with section 2935.5. It also held that tender is not required in an action under section 2923.5. (*Mabry*, at pp. 225-226.)

However, lack of compliance with section 2923.5 does not give rise to a private cause of action when the foreclosure sale has already been held. (*Mabry v. Superior Court*, *supra*, 185 Cal.App.4th at pp. 214-215.) Obviously, this holding gives the lender some incentive to hold the sale promptly after the expiration of the notice period and before an action based on section 2923.5 has been filed in order to eliminate the possibility of such an action. In our case, the sale, which was held two days after the court ruling, did not give plaintiff any opportunity to challenge the sale under section 2923.5.

The *Mabry* court said, "If section 2923.5 is not complied with, then there is no valid notice of default and, without a valid notice of default, a foreclosure sale cannot proceed." (*Mabry v. Superior Court*, *supra*, 185 Cal.App.4th at p. 223.) The court further stated that "[t]here is nothing in section 2923.5 that even hints that noncompliance with the statute would cause any cloud on title after an otherwise *properly conducted foreclosure sale*. We would merely note that under the plain language of section 2923.5, read in conjunction with section 2924g, the *only* remedy provided is a postponement of the sale before it happens." (*Id.* at p. 235, first italics added.) But a foreclosure sale without a notice of default is simply not a properly conducted foreclosure sale.

A secondary problem with the foreclosure sale is that defendant, for whatever reason,[6] violated the court's ruling, which invalidated the notice of default and required defendant to "start over" with a new notice of default. Despite the order, the foreclosure sale was held two days later. This clear disregard of the court order was an additional statutory violation reason for setting aside the sale as void. (§ 2924g, subd. (c)(1) ["[t]he trustee shall postpone the sale . . . [¶] . . . [u]pon the order of any court of competent jurisdiction"].)

If the rule were otherwise, lenders could simply ignore presale procedures, hold the sale as quickly as possible, and then contend that tender of all sums due was required to challenge the sale. This would be a heavy burden on most borrowers, who are in a foreclosure situation simply because they lack the funds to cure a default.

Postsale remedies are extremely limited, especially when the property was sold at the foreclosure sale to a bona fide purchaser for value. (See generally *Melendrez v. D&I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1249-1250; 1 Bernhardt, Cal. Mortgages, Deeds of Trust and Foreclosure Litigation, *supra*, § 7.60.) But such remedies do exist when the sale is void and when, as here, there is no allegation that the buyer was a bona fide purchaser.

For these reasons, we find that the trial court erred in sustaining defendant's demurrer to the wrongful foreclosure cause of action. The complaint states facts which

---

**6** Defendant's counsel stated at the hearing, " . . . I didn't even really know the trustee sale was in two days. I reported on that hearing and reported everything the Court said, but it happens."

14

are legally sufficient to state a cause of action. As discussed above, the trial court based its decision on a lack of tender of funds, but tender was not required because plaintiff was relying on a void foreclosure sale, not a voidable sale.[7]

V

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

"The elements of a cause of action for intentional infliction of emotional distress are well settled. A plaintiff must allege that (1) the defendant engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, severe emotional distress to the plaintiff; (2) the plaintiff actually suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual and proximate cause of the emotional distress. [Citation.] '"Whether treated as an element of the prima facie case or as a matter of defense, it must also appear that the defendants' conduct was unprivileged."' [Citation.]" (*Ross v. Creel Printing & Publishing Co., Inc.* (2002) 100 Cal.App.4th 736, 744-745, fn. omitted.)

Plaintiff's original complaint was for "severe mental suffering damages." After a demurrer for uncertainty, plaintiff filed an amended complaint for intentional infliction of emotional distress. Defendant filed another demurrer, and hearing was held on March 7, 2011. The court sustained the demurrer to the intentional infliction of emotional distress

---

[7]    Even if the sale was voidable and equitable principles applied, defendant could not complain about plaintiff's failure to do equity by not tendering funds as ordered by the trial court when defendant did not follow equitable principles in the conduct of the foreclosure sale in disregard of the trial court's order.

15

cause of action, finding that the facts alleged were not sufficient to sustain a cause of action. Leave to amend was granted, and plaintiff filed his second amended complaint on April 7, 2011.

In his second amended complaint, plaintiff alleges that the facts stated in support of his first cause of action were outrageous acts done with the intent to cause plaintiff to suffer severe mental distress. He further alleges that he did suffer severe mental distress and that the acts were authorized or ratified by corporate officers. Finally, he requests punitive damages from defendant.

Defendant's demurrer to the second amended complaint was heard on June 23, 2011. The court sustained the demurrer to the emotional distress cause of action without leave to amend "on the grounds that plaintiff after three attempts is unable to plead the requisite outrageous and intent elements, and any claim is subject to Well Fargo litigation and economic interest privileges." (Capitalization omitted.)

Plaintiff now argues that he satisfied the factual elements of the cause of action because defendant "is the only bank to have foreclosed a trustor's property for the non-payment of a non-existing note. . . . [Defendant] is the only bank who proceeded to sell in a foreclosure sale of a trustor's property barely two days after a superior court ruled that its notice of default is null and void; that the trustor is not in default; and that it must start the foreclosure anew to comply with section 2923.5."

16

Defendant contends that its actions were not sufficient to constitute outrageous conduct, that the element of intent was not alleged, and that the litigation and economic interest privileges apply.

We agree with defendant that creditors in pursuit of debtors may use permissible legal remedies to pursue their economic interests in collecting a debt or foreclosing on their security for their loan regardless of the distress caused by their legal actions.

"Undoubtedly an insurance company is privileged, in pursuing its own economic interests, to assert in a permissible way its legal rights and to communicate its position in good faith to its insured even though it is substantially certain that in so doing emotional distress will be caused. [Citations.] . . . [¶] Nevertheless, the exercise of the privilege to assert one's legal rights must be done in a permissible way and with a good faith belief in the existence of the rights asserted. [Citations.] It is well established that one who, in exercising the privilege of asserting his own economic interests, acts in an outrageous manner may be held liable for intentional infliction of emotional distress. [Citations.] [¶] Even if it could be said that defendants were asserting their legal rights in good faith, they were not privileged to do so in an outrageous manner." (*Fletcher v. Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376,395-396.)

Defendant relies on *Ross v. Creel Printing & Pub. Co., Inc., supra,* 100 Cal.App.4th 736. In that case, the court said, "In the context of debt collection, courts have recognized that the attempted collection of a debt by its very nature often causes the debtor to suffer emotional distress. [Citation.] 'Frequently, the creditor intentionally

17

seeks to create concern and worry in the mind of the debtor in order to induce payment.'

[Citation.] Such conduct is only outrageous if it goes beyond "'all reasonable bounds of

decency.'" [Citation.]" (*Id.* at p.745.) The court noted: "The assertion of an economic

interest in good faith is privileged, even if it causes emotional distress. [Citation.] In

debtor/creditor cases, the privilege is qualified, in that it can be vitiated where the creditor

uses outrageous and unreasonable means in seeking payment. [Citation.]" (*Id.* at p.745,

fn. 4.)

Thus, the existence of a qualified privilege to use normal means to collect a debt

does not answer the key question of whether the conduct here was so outrageous as to go

"beyond '"all reasonable bounds of decency."'" (*Ross v. Creel Printing & Pub. Co., Inc.,*

*supra,* 100 Cal.App.4th at p. 745.)

Defendant also cites the litigation privilege of section 47, subdivision (b). In this

regard, section 2924, subdivision (d) states, "All of the following shall constitute

privileged communications pursuant to Section 47: [¶] (1) The mailing, publication,

and delivery of notices as required by this section. [¶] (2) Performance of the

procedures set forth in this article. [¶] (3) Performance of the functions and procedures

set forth in this article if those functions and procedures are necessary to carry out the

duties described in Sections 729.040, 729.050, and 729.080 of the Code of Civil

Procedure."

Thus, when a plaintiff fails to pay amounts due on a deed of trust, a defendant may

pursue its remedies by foreclosing on its security knowing that tort actions for intentional

infliction of emotional distress are barred by the litigation privilege. In this case, plaintiff has not alleged any outrageous conduct "beyond all reasonable bounds of decency" outside the nonjudicial foreclosure process. We therefore agree with the trial court that plaintiff's factual allegations were insufficient to state a tort cause of action for intentional infliction of emotional distress. The trial court properly sustained the demurrer to plaintiff's second cause of action.

## VI

## DISPOSITION

The portion of the judgment sustaining defendant's demurrer to the first cause of action for wrongful foreclosure is reversed. The portion of the judgment sustaining defendant's demurrer to the second cause of action for intentional infliction of emotional distress is affirmed. Plaintiff shall recover costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
Acting P. J.

We concur:

MILLER
J.

CODRINGTON
J.

19