Filed 7/24/15  Turner v. CRST Van Expedited CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ANTHONY TURNER, | |
| Plaintiff and Appellant, | E059915 |
| v. | (Super.Ct.No. CIVSD1109836) |
| CRST VAN EXPEDITED, INC., | O P I N I O N |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Brian S. McCarville, Judge.  Affirmed.

Employment Lawyers Group, Karl Gerber and Ann Guleser for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith and Kevin M. Erwin for Defendant and Respondent.

Plaintiff and appellant Anthony Turner (Turner) appeals from the trial court's order granting summary judgment to defendant and respondent CRST Van Expedited,

1

Inc. (CRST) on all six causes of action in Turner's complaint. Turner alleged CRST terminated his employment because he refused to engage in activities that he believed violated the California Labor Code. Turner also alleges CRST violated Labor Code provisions dealing with employee health and safety. Finally, Turner alleges CRST failed to reimburse him for meal and lodging expenses. For the reasons discussed below, we affirm the judgment.

**FACTS AND PROCEDURE**

CRST operates a fleet of team-driven tractor trailers, assigning two drivers to one truck to maximize efficiency. The two drivers alternate between driving and resting in the truck's sleeper cab. CRST hired Turner as a long-haul driver around April 7, 2011. Turner completed training around May 15, 2011. Turner was off work and on "home time" from May 16 to May 19, 2011. Turner began driving for CRST on May 20, 2011, with CRST's Fontana terminal as his home terminal. CRST drivers make deliveries for four weeks without a day off and for every seven days they earn one day off, which they can use at the end of the four weeks as a four-day home time off.

Around June 7, 2011, Turner submitted a home time request asking for four days off beginning in the latter part of June. A few days later, Turner's supervisor, Robby Storm (Storm), asked Turner to stay out on the road for two more weeks so Turner could synchronize his schedule with that of his new codriver so that they could take the same four days off. Turner reminded Storm of his request and told Storm he had made appointments and needed to be home. Around June 20, 2011, Turner reminded Storm of

2

his request, stated that he wanted his four days off after working 30 days, and asked to be routed to California for home time. Turner was routed back home. Toward the end of June 2011, Turner arranged to pick up certain deliveries earlier so that he could get home earlier, otherwise his trip would have lasted 40 days without a day off. Turner returned to the Fontana terminal on June 25, 2011, and began his home time. Turner left some personal belongings in the truck because he thought he would be driving the same truck again with his codriver beginning June 30, 2011.

Turner and Storm continued to communicate. Around June 27, 2011, Turner was told that CRST had sent his codriver out on another route. Pursuant to company policy, it was Turner's responsibility to find another codriver before he could be assigned another route. In late June, Turner asked Storm to send him a list of codrivers. Storm told Turner that he immediately e-mailed him a list, but Turner contends he never received it. Storm may have had an incorrect or mistyped e-mail address for Turner. In early July, Turner went to the Fontana terminal to see if he could find a codriver. A driver can normally obtain a codriver within 24 hours after visiting a CRST terminal. Turner alleged he could not locate a codriver during his visit to the Fontana terminal. Turner found new employment with another trucking company and began working at that company on July 21, 2011. No one from CRST told Turner that he was terminated, either verbally or in writing. Turner believed Storm purposely refused to assign him another codriver and route because Turner insisted on taking four days off after working for more than 30 consecutive days for CRST without a break.

3

On November 16, 2011, Turner filed a first amended complaint for damages alleging six causes of action: (1) violation of Labor Code section 1102.5;[1] (2) section 2802 penalties; (3) wrongful termination in violation of public policy; (4) intentional infliction of emotional distress; (5) Labor Code violations regarding workplace safety; and (6) unsafe working conditions—section 2699 remedies. Turner alleged he was wrongfully terminated after he complained about safety issues at CRST.

On December 15, 2011, CRST filed its answer, in which it asserted a general denial and all appropriate affirmative defenses.

On May 2, 2013, CRST filed a motion for summary judgment/adjudication seeking dismissal of each of Turner's six causes of action.

Turner filed his opposition on July 3, 2013.

CRST filed its reply on July 12, 2013.

The court heard argument on the motion on August 19, 2013, and granted summary judgment on each of the six causes of action.

This appeal followed.

## DISCUSSION

Standard of Review

Summary judgment is properly granted if the "affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

4

be taken" in support of and in opposition to the motion "show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subds. (b)(1), (c).)

"On review of a summary judgment in favor of the defendant, we review the record de novo to determine whether the defendant has conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial. [Citation.]" (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673-674, disapproved on other grounds in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted.)

"A defendant moving for summary judgment must prove the action has no merit. He does this by showing one or more elements of plaintiff's cause of action cannot be established or that he has a complete defense to the cause of action. At this point, plaintiff then bears the burden of showing a triable issue of material fact exists as to that cause of action or defense." (*Towns v. Davidson* (2007) 147 Cal.App.4th 461, 466.)

A. *First Cause of Action—Section 1102.5, Subdivision (c)—Retaliation*

Section 1102.5, subdivision (c), provides: "An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or

5

regulation." Turner alleged in his complaint that CRST terminated his employment in retaliation because he refused to work more than 30 consecutive days and complained about being forced to work for more than 30 consecutive days.

The undisputed facts indicate that CRST did not terminate Turner from his employment with CRST, either actually or constructively. No one at CRST ever told Turner that he was being terminated. Turner effectively resigned no later than July 21, 2011, when he began a job with another trucking company. Therefore, Turner did not establish a cause of action for retaliation.

B. *Second Cause of Action—Section 2802—Reimbursement for Meals and Lodging*

Section 2802, subdivision (a), requires an employer to reimburse an employee "for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . ." Turner alleged in his complaint that he was entitled to reimbursement for "lodging for each night that he was forced to sleep in the truck and was not allowed to stay at a hotel." Turner also alleged he was entitled to reimbursement for meal costs "since he was forced to work 30 consecutive days without a hotel room and without being reimbursed for meals." In his appellate brief, Turner cites to section 2802's general statement set forth above, but does not fulfill his burden on appeal to establish error by, for example, citing to any law based on section 2802 requiring a trucking company to reimburse its drivers for meals while on the road. The California labor regulation which Turner repeatedly cites in his complaint to support his request for reimbursement—California Code of Regulations, title 8, section 13703—is

not a current, valid regulation. The trial court, in its order granting summary judgment, pointed out that this regulation "is not the law. It is only a proposal." Therefore, Turner did not establish a cause of action for reimbursement of meal and lodging expenses.

C. *Third Cause of Action—Wrongful Termination in Violation of Public Policy*

The elements of wrongful termination in violation of public policy are: (1) an employer-employee relationship; (2) a termination or other adverse employment action; (3) the termination violated a public policy; and (4) the termination caused the plaintiff's damages. (*Holmes v. General Dynamics Corp.* (1993) 17 Cal.App.4th 1418, 1426, fn. 8.) As discussed above, CRST did not either directly or constructively terminate Turner; rather, he effectively resigned by taking a new job approximately one week after failing to obtain a new codriver during his visit to the CRST terminal in Fontana. Therefore, Turner did not establish a cause of action for wrongful termination in violation of public policy.

D. *Fourth Cause of Action—Intentional Infliction of Emotional Distress*

The elements of intentional infliction of emotional distress are: "(1) the defendant engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, severe emotional distress to the plaintiff; (2) the plaintiff actually suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual and proximate cause of the emotional distress." (*Ross v. Creel Printing & Publishing Co.* (2002) 100 Cal.App.4th 736, 744-745.) In his complaint, Turner alleged CRST engaged in outrageous conduct both by firing him and by exposing

7

him to the dangerous environment in the truck, which included driving and sleeping in a confined space without proper ventilation and without shower or bathroom facilities, and driving in excess of 30 days in a row.  As discussed above, CRST did not fire Turner. Regarding the conditions in which Turner worked while codriving the CRST truck, to the extent that they may have exceeded the conditions that an employee would be expected to encounter in a long-haul trucking job, CRST is correct that any recovery for emotional injury as a result of his working conditions would have to be obtained exclusively under California's worker's compensation law.  (§ 3602.)  In any case, the trial court was correct that, even accepting Turner's description of these conditions as accurate,[2] they just did not rise to the level of "extreme" or "outrageous" as is required to sustain a cause of action for intentional infliction of emotional distress.

E.  *Fifth Cause of Action—Labor Code Violations Regarding Workplace Safety*

In his complaint, Turner alleged CRST failed to provide him with a safe and healthful place of employment, safe practices and procedures, and maintained and required him to work in an unhealthful place of employment, pursuant to sections 6400 to 6404.  The facts upon which he based these allegations were, again, the working conditions on the truck and being made to work in excess of 30 days in a row.  We agree with the trial court that these facts—driving and sleeping in a confined space without ventilation other than from the air surrounding the truck and without shower or bathroom

---

[2]  The trial court sustained CRST's objections to statements made in Turner's declaration regarding it not being "safe to move in the truck while it was in motion" and regarding the air supply in the sleeping area being "unhealthy."

facilities, and driving in excess of 30 days in a row—as alleged by defendant, do not demonstrate that there was an unsafe or unhealthy workplace or any defects in the truck that made it unhealthy or unsafe.

As part of this cause of action, Turner also alleged violations of sections 6310 (retaliating against an employee for complaining to the Division of Occupational Safety and Health or to his employer about a health and safety violation) and 6311 (discharging an employee for refusing to do work that would violate the health and safety rules). Regarding section 6310, Turner first complained to state labor and safety agencies about conditions at CRST on July 27, 2011, which was after he stopped working for CRST and after CRST could possibly retaliate for this complaint. In addition, for the reasons stated above, we conclude that CRST did not terminate Turner. Regarding section 6311, again, CRST did not terminate Turner.

F. *Sixth Cause of Action—Unsafe Working Conditions*

The sixth cause of action realleged the unsafe working conditions previously described and points to section 2699, subdivisions (f) and (g), which allows Turner to recover compensation and attorney fees for those conditions. For the reasons discussed above, the trial court correctly dismissed this cause of action because Turner's general descriptions of typical long-haul truck driving conditions do not raise a material question of fact that he was subjected to unsafe working conditions.

**DISPOSITION**

The judgment of the trial court is affirmed.

9

CUNNISON
J.*

We concur:

HOLLENHORST
Acting P. J.

McKINSTER
J.

---

\* Retired judge of the Riverside Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.