Filed 1/28/14  Pedery-Edwards v. JP Morgan Chase Bank CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JUDITH PEDERY-EDWARDS, | D063307 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2011-00056415-CU-OR-NC) |
| JP MORGAN CHASE BANK, N.A. et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of San Diego County, Jacqueline M. Stern, Judge.  Affirmed.

Judith Pedery-Edwards, in pro. per., for Plaintiff and Appellant.

Bryan Cave LLP, Samantha M. Dillon and Sean D. Muntz for Defendants and Respondents.

# I.

## INTRODUCTION

Appellant Judith Pedery-Edwards appeals from a judgment entered in favor of defendants JP Morgan Chase Bank, N.A. (Chase) and the Federal National Mortgage Association (Fannie Mae) after the trial court sustained the defendants' general demurrer to her second amended complaint, without leave to amend.

On appeal, Pedery-Edwards, appearing in propria persona, asserts that the trial court erred in concluding that her second amended complaint fails to state any cause of action. After reviewing the operative complaint and considering the parties' arguments on appeal, we conclude that the trial court properly sustained the defendants' general demurrer to the second amended complaint. We further conclude that the trial court did not abuse its discretion in denying leave to amend and dismissing the action in its entirety. We therefore affirm the judgment.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

Pedery-Edwards obtained a loan in the amount of $417,000 from Washington Mutual Bank, F.A. (Washington Mutual) in 2007.

The loan was secured by a deed of trust encumbering property located in Encinitas, California. The deed of trust identifies Washington Mutual as the beneficiary and California Reconveyance Company as trustee.

Pedery-Edwards defaulted on the loan, and Chase, which acquired Pedery-Edwards's mortgage from Washington Mutual in September 2008, foreclosed on the

2

property that secured the loan in 2010.[1]  A trustee's sale of the property took place on December 22, 2010.

Pedery-Edwards filed her initial complaint in July 2011, naming Chase, Washington Mutual, and Fannie Mae as defendants.  Three months later, Pedery-Edwards amended the complaint to name only Chase and Fannie Mae as defendants.  The first amended complaint (FAC) alleged 21 causes of action.

In response to the FAC, Chase and Fannie Mae removed the case to a federal district court and sought dismissal of the action for failure to state a claim.  The federal

[1]     Chase acquired certain assets and liabilities of Washington Mutual through the Federal Deposit Insurance Corporation (FDIC) in September 2008.  According to documents that Chase submitted to the trial court pursuant to an unopposed request for judicial notice, the FDIC became the receiver of Washington Mutual in September 2010. As set forth in a purchase and assumption agreement (P&A Agreement) between the FDIC and Chase dated September 25, 2008, the FDIC then sold to Chase "all of the assets" of Washington Mutual (with specified exceptions not applicable here).  There is a document in the record entitled "Order regarding request for judicial notice in support of demurrer to plaintiff's second amended complaint."  The text of the order attached to the cover page states that the trial court sustained the defendants' demurrer without leave to amend and dismissed the second amended complaint with prejudice, but does not mention the trial court's ruling with respect to the request for judicial notice.  However, given that (1) the request for judicial notice was unopposed; (2) there was a hearing at which the trial court might have granted the request for judicial notice by way of oral ruling, but Pedery-Edwards failed to include the reporter's transcript of that hearing in the record on appeal; (3) there is authority pursuant to which the taking of judicial notice of this document would be proper (see Evid. Code, § 452, subd.(h); see also *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 753 (*Scott*) [recognizing this provision of the Evid. Code as supporting court's grant of judicial notice of the same P&A Agreement]); (4) numerous other courts have taken judicial notice on a similar basis (see *Scott*, *supra*, at p. 753, fn. 2 [citing eight federal court opinions approving of taking judicial notice of this P&A Agreement]); (5) the court ultimately sustained the defendants' demurrer as to all of Pedery-Edwards's causes of action; and (6) Pedery-Edwards does not challenge the validity of the document or its presence in the appellate record, we consider the document to be validly included in the appellate record.

district court dismissed with prejudice Pedery-Edwards's claims for violations of the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, and the Gramm-Leach-Bliley Act, as well as her request for declaratory relief. The district court granted Pedery-Edwards leave to amend with respect to the remaining causes of action.

Pedery-Edwards filed a second amended complaint (SAC) in the federal district court, alleging 12 causes of action (see fn. 8, *post*). In that pleading, Pedery-Edwards alleged no federal causes of action. As a result, the federal district court remanded the matter to the superior court.

In the superior court, the defendants demurred to the SAC. The trial court sustained the demurrer without leave to amend and dismissed Pedery-Edwards's action. Pedery-Edwards filed a timely notice of appeal.

## III.

## DISCUSSION

A. *Legal standards*

We review de novo an order sustaining a demurrer to determine whether the complaint alleges facts sufficient to state a cause of action. (*CPF Agency Corp. v. Sevel's 24 Hour Towing Service* (2005) 132 Cal.App.4th 1034, 1042.) We exercise our independent judgment as to whether the complaint states a cause of action. (*Palestini v. General Dynamics Corp*. (2002) 99 Cal.App.4th 80, 86.) " 'A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.'

4

[Citation.]"  (*Gomes v. Countrywide Home Loans, Inc*. (2011) 192 Cal.App.4th 1149, 1153 (*Gomes*).)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

B.      *Analysis*

1.      *First cause of action for "injunctive relief"*

Pedery-Edwards's first cause of action is one for "injunctive relief."  Although Pedery-Edwards appears to be contending that a trustee's sale that occurred was "wrongful" and should be "nullified and/or Voided," she does not identify a legal claim on which her request for injunctive relief is based.  "Injunctive relief is a remedy, not a cause of action."  (*City of South Pasadena v. Department of Transportation* (1994) 29 Cal.App.4th 1280, 1293.)  Thus, absent an underlying cause of action, a request for injunctive relief does not constitute a cause of action itself, and cannot be the basis for relief.  The trial court properly sustained the defendants' demurrer to the first "cause of action."

2.      *Second cause of action for an "accounting"*

Pedery-Edwards attempts to assert a "Demand for an Accounting" as her second cause of action.  This "cause of action" suffers from the same problem as the first: an accounting is not, itself, an independent cause of action, but rather, is a remedy.  (See

5

*Duggal v. G.E. Capital Communications Services, Inc.* (2000) 81 Cal.App.4th 81, 95 ["The right to an accounting is derivative and depends on the validity of a plaintiff's underlying claims"].)  For this reason, the trial court properly sustained the defendants' demurrer to the second cause of action.  Further, to the extent that Pedery-Edwards's request for an accounting can be construed to be based on a separate, underlying claim, such a request also fails because the right to the remedy of an accounting requires a showing that some "balance is due the plaintiff."  (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179.)  Pedery-Edwards does not allege that she is owed any money by the defendants.  Her request for an accounting fails for this reason, as well.

3.     *Third cause of action for "Lack of Standing/Wrongful Foreclosure"*

In her third cause of action, Pedery-Edwards alleges that the defendants lacked standing to foreclose on the property.  She contends that "Defendant Federal National Mortgage Association has never had a business relationship with Plaintiff(s), and Plaintiff did not execute the Note or Deed in favor of any defendants."  The gist of Pedery-Edwards's claim is that the defendants failed to establish that either of them is a proper party entitled to institute foreclosure proceedings on the property.  More specifically, Pedery-Edwards contends that neither of the defendants was entitled to foreclose on the property because one of them held only a deed of trust on the property, and had not demonstrated that it possessed the original promissory note secured by that deed of trust,

6

and the other had no "valid, legal interest in the indebtedness, and upon information and belief . . . is not the lender, servicer or assignee with rights to collect."[2]

However, California law does not require that a party instituting nonjudicial foreclosure proceedings on real property possess the original promissory note on which the foreclosure is based. (*Debrunner v. Deutsche Bank National Trust Co*. (2012) 204 Cal.App.4th 433, 439.) Nor is it of any consequence that an assignment of a promissory note has not been recorded. (See *Fontenot v. Wells Fargo Bank , N.A*. (2011) 198 Cal.App.4th 256, 272 (*Fontenot*).) In addition, a plaintiff does not properly allege a cause of action for lack of standing to foreclose by merely alleging that his original promissory note has been sold in the secondary market. (*Gomes, supra,* 192 Cal.App.4th at pp. 1152, 1155; *Robinson v. Countrywide Home Loans, Inc*. (2011) 199 Cal.App.4th 42, 45 (*Robinson*) [affirming order sustaining demurrer without leave to amend for wrongful initiation of foreclosure based on allegation that "promissory note was 'sold and resold' on the secondary mortgage market, and that as a result, it had become difficult or impossible to ascertain the actual owner of the beneficial interest in the note"].) Although Pedery-Edwards's promissory note was not sold in the secondary market as contemplated by *Gomes* and *Robinson*, it was, in effect, "sold" to Chase pursuant to the

---

2    The SAC alleges that "once the DEED was 'assigned' to various parties the DEED was detrimentally affected in a number of ways" and that "no foreclosing party was in fact a holder of the note evidencing the indebtedness." It further alleges that "defendant Chase does not have [a] beneficial interest in the subject Note, and, accordingly, lacks standing to foreclose."

P&A Agreement between the FDIC and Chase in which Chase purchased substantially all of Washington Mutual's assets.[3]

The SAC also contains an allegation that there "does not exist a valid assignment of the Deed of Trust from Judith Pedery-Edwards to any defendant recorded with the San Diego County Recorder's Office. " "The theory that a foreclosure was wrongful because it was initiated by a nonholder of the deed of trust has also been phrased as (1) the foreclosing party lacking standing to foreclose or (2) the chain of title relied upon by the foreclosing party containing breaks or defects." (*Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1093.) Court have recognized the existence of a cause of action for wrongful foreclosure where a party alleged not to be the true beneficiary of the deed of trust instructs the trustee to initiate a nonjudicial foreclosure. (*Id*. at p. 1094.) However, in order to properly allege a cause of action under this theory of wrongful foreclosure, a plaintiff must do more than "simply stat[e] that the defendant who invoked the power of sale was not the true beneficiary under the deed of trust. Rather, a plaintiff asserting this theory must allege facts that show the defendant who invoked the power of sale was not the true beneficiary." (*Ibid*., citing *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1506 (*Herrera*) ["plaintiff failed to plead specific facts demonstrating the transfer of the note and deed of trust were invalid"].)

---

3      A bank purchasing all or substantially all of the assets of another bank, including the latter bank's loans, is analogous to a bank or other entity purchasing loans from another bank on the secondary market. Thus, the reasoning of *Gomes* and *Robinson* should similarly apply here.

8

By alleging only that she "did not execute the Note or Deed in favor of any defendants" and further alleging, without factual specificity, that no valid assignment of the deed of trust was recorded, Pedery-Edwards's allegations in the SAC are insufficient to demonstrate that Chase is not the true beneficiary of the deed of trust. In addition, Pedery-Edwards concedes that in late September 2008, Washington Mutual surrendered its interest in the property to the FDIC. Although Pedery-Edwards claims that the property "was never properly transferred through the FDIC to any 3rd party," the record demonstrates that Chase purchased virtually all of Washington Mutual's assets from the FDIC in September 2008. In the absence of any specific factual allegations that would demonstrate that Chase is not the true beneficiary of the deed of trust, the SAC fails to properly plead a cause of action for wrongful foreclosure under the theory that Chase lacked standing to foreclose.

To the extent that Pedery-Edwards attempts to undermine the nonjudicial foreclosure based on allegations in the SAC questioning whether the "Substitution of Trustee" document identifying Quality Loan Service Corporation as the new trustee under the deed of trust was "robo-signed," this effort is also fruitless. Specifically, Pedery-Edwards fails to allege any facts showing that she suffered prejudice as a result of any lack of authority on the part of the parties that participated in the foreclosure process. Pedery-Edwards does not claim that the foreclosure documents were fraudulent or contained false information, but merely that they may have been "robo-signed," and she concedes that she was in default on the loan. Pedery-Edwards also does not deny that she received notice of the default and notice of the foreclosure sale. Based on these

9

concessions, any alleged irregularities in the signing process regarding the "Substitution of Trustee" form could not have prejudiced her: "Prejudice is not presumed from 'mere irregularities' in the process. [Citation.] Even if MERS lacked authority to transfer the note, it is difficult to conceive how plaintiff was prejudiced by MERS's purported assignment, and there is no allegation to this effect. Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, *an assignment merely substituted one creditor for another*, without changing her obligations under the note." (*Fontenot*, *supra*, 198 Cal.App.4th at p. 272, italics added; see also *Herrera*, *supra*, 205 Cal.App.4th at p. 1508 [plaintiff could not show prejudice, "even assuming there were procedural defects in the assignment of the DOT from MERS to OneWest and the substitution of trustee," and thus had failed to establish that amendment could cure defects in pleading]; S*iliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 85 [borrowers lacked standing to complain about loan servicer's and assignee's alleged lack of authority to foreclose on deed of trust where borrowers were in default under the note, absent evidence that the original lender would have refrained from foreclosure].)

The trial court's sustaining of the defendants' demurrer to Pedery-Edwards's third alleged cause of action for "lack of standing/wrongful foreclosure" was thus proper.

4.      *Fourth cause of action for alleged violations of Civil Code[4] sections 2923.6 and 2932.5*

Pedery-Edwards's fourth cause of action is titled "California Civil Code Section 2923.6 and 2932.5."

During the relevant time period, section 2923.6 provided, inter alia: "It is the intent of the Legislature that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority."  (§ 2923.6, former subd. (b), amended by Stats. 2012, ch. 86.)[5]  The statute also provided:

> "The Legislature finds and declares that any duty that mortgage servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, or to all investors under a pooling and servicing agreement, not to any particular party in the loan pool or investor under a pooling and servicing agreement, and that a mortgage servicer acts in the best interests of all parties to the loan pool or investors in the pooling and servicing agreement if it agrees to or implements a loan modification or workout plan for which both of the following apply:
>
> "(1) The loan is in payment default, or payment default is reasonably foreseeable.
>
> "(2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis."  (§ 2923.6, subd. (a).)

---

[4]     All statutory references are to the Civil Code unless otherwise specified.

[5]     More recent amendments to section 2923.6, effective January 1, 2013, place additional requirements on loan servicers, mortgagees, trustees, beneficiaries, and/or authorized agents.  These additional requirements are not at issue in Pedery-Edwards's action.

11

Pedery-Edwards alleges in the SAC that her loan is "presently in default and/or default is reasonably anticipated," and further alleges that "anticipated recovery through a loan modification is [in] excess of the recovery through foreclosure on a net present value." Pedery-Edwards also asserts that she is "ready and willing to enter into a loan modification."

However, at the relevant time, section 2923.6 did not create a private right of action and did not require that loan servicers modify loans. (See *Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1056 ["But . . . section 2923.6 does not grant a right to a loan modification"]; see also *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 222 ["Section 2923.6 merely expresses the *hope* that lenders will offer loan modifications on certain terms"] and *Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1617 ["There is no 'duty' under . . . section 2923.6 to agree to a loan modification"].) As a result, Pedery-Edwards does not have a private right of action against the defendants under section 2923.6.

Further, section 2932.5, which requires the recording of the assignment of a beneficiary interest in a mortgage, does not apply where the power of sale is conferred via a deed of trust. (*Calvo v. HSBC Bank USA, N.A.* (2011) 199 Cal.App.4th 118, 123.) Pedery-Edwards's loan was secured by a deed of trust; thus, section 2932.5 simply does not apply. The trial court therefore properly determined that Pedery-Edwards failed to state a cause of action for a violation of this statutory provision, and its sustaining of the defendants' demurrer to the fourth alleged cause of action was therefore proper.

12

5.      *Fifth cause of action for alleged violation of section 1770 and Business and Professions Code section 17200*

In her fifth cause of action, Pedery-Edwards alleges violations of two separate statutes: section 1770, otherwise known as the Consumer Legal Remedies Act (CLRA) (§ 1750 et seq.), and Business and Professions Code section 17200, otherwise known as the Unfair Competition Law (UCL).

a.      *The CLRA claim*

The CLRA prohibits " 'unfair methods of competition and unfair or deceptive acts or practices' in transactions for the sale or lease of goods to consumers."  (*Daugherty v. Am. Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 833.)  Section 1770, subdivision (a) begins, "The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services are unlawful . . . ."  The statute then enumerates the 25 specific "methods of competition" and "acts or practices" that are made unlawful.

Pedery-Edwards's SAC alleges, without any specific factual allegations, that the defendants violated subdivision (a)(14) and (a)(16)-(a)(19) of section 1770.[6]

---

6      Those portions of the CLRA provide:

"(14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

"[¶] . . . [¶]

"(16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

13

By its terms, the CLRA applies to transactions that result in the "sale or lease of *goods* or *services*." (§ 1770, subd. (a), italics added.) The CLRA defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes, . . . including goods which, at the time of the sale or subsequently, are to be so affixed to real property as to become part of real property, whether or not severable [therefrom]," and defines "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." (§ 1761, subds. (a), (b).) The CLRA does not apply to transactions resulting in the sale or lease of real estate. (*McKell v. Washington Mutual, Inc*. (2006) 142 Cal.App.4th 1457, 1488.)

b. *The UCL claim*

Pedery-Edwards's only reference to the UCL in the SAC is the following, which she alleges immediately after her recitation of subdivision (a)(14) and (a)(16)-(19) of section 1770: "And the Defendants and each of them thereby and by the violation of other regulations and rules and statutes and by engaging in the above listed unfair

"(17) Representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction.

"(18) Misrepresenting the authority of a salesperson, representative, or agent to negotiate the final terms of a transaction with a consumer.

"(19) Inserting an unconscionable provision in the contract." (§ 1770, subd. (a)(14) & (a)(16)-(a)(19).)

14

practices violated: . . . Business and Professions Code section 17200 et seq[.]"  It thus appears from the complaint that Pedery-Edwards is relying on the alleged violations of section 1770 as the basis for the violations of the UCL that, pursuant to a broad reading of the SAC, she may be independently alleging.

"The UCL defines 'unfair competition' as 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.' " (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370 (*Zhang*), quoting Bus. & Prof. Code, § 17200.)  "By proscribing 'any unlawful' business act or practice [citation], the UCL ' "borrows" ' rules set out in other laws and makes violations of those rules independently actionable." (*Zhang*, *supra*, at p. 370.)  "However, a practice may violate the UCL even if it is not prohibited by another statute.  Unfair and fraudulent practices are alternate grounds for relief.  [Citation.]  False advertising is included in the 'fraudulent' category of prohibited practices." (*Ibid*.)

Based on Pedery-Edwards's SAC, it appears that she seeks to "borrow" the rules set out in section 1770, subdivision (a) to assert additional, independent violations of the UCL.[7]  However, as we have explained, Pedery-Edwards has not stated a claim under the CLRA for the alleged violations because she is alleging that the defendants' illegal conduct occurred with respect to a real estate transaction, as opposed to the sale or lease

---

7     This interpretation of the complaint is supported by Pedery-Edwards's briefing on appeal, in which she does not even refer to Business and Professions Code section 17200, instead choosing to focus on her allegations that she states a viable claim under the CLRA.

of goods or services.  As a result, the allegations of violations of the UCL in the SAC that are based on the alleged violations of the CLRA are insufficient to state a viable claim under the UCL.

The trial court thus properly sustained the defendants' demurrer to Pedery-Edwards's fifth cause of action.

6. *Sixth cause of action for deceptive practices/fraud*

Pedery-Edwards's sixth[8] cause of action is titled "Deceptive Practices, Common Law Fraud," and in it she alleges that the defendants "have engaged in a course of conduct that is deceptive and inappropriate."  The elements of a fraud cause of action are (1) misrepresentation, (2) knowledge of the falsity or scienter, (3) intent to defraud, i.e., induce reliance, (4) justifiable reliance, and (5) resulting damages.  (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)  These elements may not be pled in a general or conclusory fashion, but, rather, must be pled specifically—that is, a plaintiff must plead facts that show with particularity the elements of the cause of action.  (*Id*. at p. 645.)

Pedery-Edwards's SAC does not plead facts to support a claim for fraud. Specifically, she does not identify a single false statement made, nor does she claim that she relied on any allegedly false statements or that she was damaged by any such

---

8      Due to what appears to be a drafting error, the SAC identifies this cause of action as the "EIGHTH CAUSE OF ACTION."  However, the SAC does not include a sixth or seventh cause of action, making Pedery-Edwards's claim for "Deceptive Practices, Common Law Fraud" her sixth claim and making the total number of claims alleged 12. The remaining causes of action are similarly misnumbered.  We will refer to them in their actual order, and not by their identified numerical title.

statements.   There are simply insufficient pleaded facts to make out a claim for fraud.

The trial court thus properly sustained the demurrer as to this cause of action.

> 7.      *Seventh cause of action for defamation*

Pedery-Edwards's seventh cause of action is for defamation.  She contends that the "filing of the Notice of Default" was "libelous."  Specifically, Pedery-Edwards alleges that the notice "in effect called plaintiff too poor to pay her bills, dishonest, a deadbeat," and therefore, that the statements in the notice were "per se defamatory."

"The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.' [Citations.]"  (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720.)

The "mailing, publication and delivery of notices" required pursuant to section 2924 constitute "privileged communications pursuant to section 47."  (§ 2924, subd. (d)(1).)  "The privileges of . . . section 47, unlike evidentiary privileges which function by the exclusion of evidence . . . , operate as limitations upon liability . . . .  The assertion of the privilege as a defense is thus a direct challenge to liability."  (*Block v. Sacramento Clinical Labs, Inc.* (1982) 131 Cal.App.3d 386, 389.)  "The privilege created by . . . section 47, though part of the statutory law dealing with defamation, has evolved through case law application into a rather broad protective device which attaches to various classes of persons and applies to types of publications and in types of actions not traditionally identified with the field of defamation."  (*Rosenthal v. Irell & Manella* (1982) 135 Cal.App.3d 121, 125.)

"[S]ection 2924 deems the statutorily required mailing, publication, and delivery of notices in nonjudicial foreclosure, and the performance of statutory nonjudicial foreclosure procedures, to be privileged communications under the qualified common interest privilege of section 47, subdivision (c)(1)." (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 325.) Thus, a plaintiff must demonstrate that a defendant acting pursuant to these provisions acted with malice. (*Id.* at pp. 333-334, 343.)

The notice of default at issue in this case was made in conformance with the statutory nonjudicial foreclosure procedures pursuant to section 2924. As a result, Pedery-Edwards would have to establish that the defendants acted maliciously in order to state a claim for defamation. She has not alleged sufficient facts to support this element of the claim. Further, Pedery-Edwards fails to demonstrate that she had not, in fact, defaulted on her loan. In fact, in other allegations of the SAC, Pedery-Edwards concedes that she was in default. Thus, Pedery-Edwards has not alleged that the notice of default was false. The trial court therefore properly sustained the defendants' demurrer with respect to this cause of action.

8. *Eighth cause of action for negligent infliction of emotional distress*

Pedery-Edwards's eighth cause of action attempts to assert a claim for negligent infliction of emotional distress. "Negligent infliction of emotional distress is not an independent tort; it is the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply." (*Ess v. Eskaton Properties, Inc.* (2002) 97 Cal.App.4th 120, 126.) Generally, no fiduciary duty exists between a borrower and lender in an arm's length transaction. (*Oaks Management Corporation v. Superior Court*

18

(2006) 145 Cal.App.4th 453, 466; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 579.) "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096.)

Pedery-Edwards has not pled facts to establish that the defendants owed her any particular duty of care, or that such duty was breached. The trial court thus properly sustained the demurrer as to this cause of action.

9. *Ninth cause of action for intentional infliction of emotional distress*

The ninth cause of action that Pedery-Edwards attempts to assert is one for intentional infliction of emotional distress. The elements of a cause of action for intentional infliction of emotional distress are "that (1) the defendant engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, severe emotional distress to the plaintiff; (2) the plaintiff actually suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual and proximate cause of the emotional distress." (*Ross v. Creel Printing & Publishing Co., Inc.* (2002) 100 Cal.App.4th 736, 744-745 (*Ross*).) "To be outrageous, conduct must be 'so extreme as to exceed all bounds of that usually tolerated in a civilized community.' [Citation.]" (*Id.* at p. 745.)

Pedery-Edwards has not pled any allegations of conduct by defendants that could be considered "outrageous" under the applicable test. Pedery-Edwards asserts that the "outrageous" conduct on the part of defendants is the "wrongful threatening of and then

19

taking of plaintiffs' [sic] home," and that the "modification and collection practices, representations and repetition were designed to force Plaintiff into surrendering her rights due to inability to take the pressure from the defendants." However, the specific factual allegations of the SAC as to the conduct of various of the defendants' employees demonstrate that Pedery-Edwards stopped making payments on her loan, and that the defendants' employees thereafter failed to assist her in modifying her loan. These facts, even if true, are not " 'so extreme as to exceed all bound of that usually tolerated in a civilized community.' [Citation.]" (*Ross*, *supra*, 100 Cal.App.4th at p. 745.) This was a creditor/debtor situation where the defendants ultimately exercised their rights under the loan agreement. There are no allegations that in conducting the nonjudicial foreclosure proceedings, or in dealing with Pedery-Edwards generally, any of the defendants threatened, insulted, abused or humiliated her. Pedery-Edwards thus failed to state a claim for intentional infliction of emotional distress, and the trial court properly sustained the demurrer as to this cause of action.

          10.     *Tenth cause of action for promissory estoppel*

The tenth cause of action in the SAC is one for promissory estoppel. Pedery-Edwards alleges: "Defendant Chase made a promise to the Plaintiff which was calculated and reasonably expected to induce Plaintiff to forbear from making payments and or seeking professional assistance in rectifying her mortgage situation. Plaintiff in relying on the future and contemporary good faith and fair dealing of the defendant and the straightforward promise made by defendants did in fact forbear and in fact did act to her detriment in completing questionnaires and providing numerous private facts regarding

20

Plaintiff." In attempting to make out this cause of action, Pedery-Edwards references two letters from Chase that she contends indicate that there was an agreement between the Chase and Pedery-Edwards to the effect that "no further collection/foreclosure action would take place," and that in spite of this agreement, Chase moved forward with its foreclosure.

"In California, under the doctrine of promissory estoppel, '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.' [Citations.] Promissory estoppel is 'a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced.' [Citation.]" (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310.) " '[A] promise is an indispensable element of the doctrine of promissory estoppel. The cases are uniform in holding that this doctrine cannot be invoked and must be held inapplicable in the absence of a showing that a promise had been made upon which the complaining party relied to his prejudice . . . .' [Citation.] The promise must, in addition, be 'clear and unambiguous in its terms.' [Citation.]" (*Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031, 1044.)

Although Pedery-Edwards alleges in this cause of action that one or both of the defendants "made a promise to the Plaintiff . . . to induce" her to stop paying her mortgage or not to seek "professional assistance in rectifying her mortgage situation," she

21

does not identify a promise that was made to her by defendants in exchange for her nonpayment and/or not seeking additional assistance. At other points in the SAC, Pedery-Edwards alleges that she "was repeatedly told that no modification process would be available until and unless [she] was in default of [her] loan and stopped paying the mortgage." These statements, however, do not constitute a promise that a loan modification would occur if Pedery-Edwards stopped paying on her loan. Rather, these are statements that she would not be eligible to be considered for a loan modification unless she had already defaulted on a loan.

Pedery-Edwards's references to the two letters attached to the SAC also fail to establish the existence of a promise made by either of the defendants. The first letter is attached as Exhibit H to the SAC, and begins, "WE ARE A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." The letter is "signed" by "CUSTOMER SERVICE [¶] Loss Mitigation Department [¶] Chase," and informs Pedery-Edwards that she "ha[s] been approved for a Special Forbearance Agreement, which provides temporary relief from [her] loan payments." The letter informs Pedery-Edwards that Chase must receive a signed copy of the agreement from her by "05/01/10" in order to implement the agreement. The "Special Forbearance Agreement" attached to the letter states, in relevant part:

> "The period of forbearance will be from 05/01/10 to 07/01/10. The period of forbearance will be in effect once the signed Special [F]orbearance Agreement ('Agreement') is received in our office, and must be received no later than 05/01/10.

22

"If you provide us with updated financial information before this agreement expires, we will reevaluate your application for assistance and determine if we are able to offer you a permanent workout solution to bring your loan to a current status. If you do not send the updated financial information by the expiration date of this agreement, we will release your loan back into normal servicing (collections and/or foreclosure)."

The "Special Forebearance Agreement" attached to the SAC is unsigned. Further, Pedery-Edwards does not allege in the SAC that she complied with its terms. However, even assuming that Pedery-Edwards signed and returned the agreement and complied with the terms, the letter does not promise anything other than that Chase would permit Pedery-Edwards to avoid payment on her loan between May 1, 2010 and July 1, 2010, and that if she were to send additional financial information, it would reevaluate her application for a loan modification. Pedery-Edwards does not allege that these promises caused her to forbear from doing something or to act to her detriment, nor does she allege that Chase failed to follow through with the "promises" in this letter.

Finally, the SAC also refers to a letter from Chase seeking additional documents in order for Pedery-Edwards to be considered for a "Trial Period Plan." The letter informs Pedery-Edwards that if Chase does not receive the identified documents within 15 days of the date of the letter, Chase will assume that she was withdrawing her request for a modification and would cancel her application. In the SAC, Pedery-Edwards alleges that this letter "explain[ed] that if the private information was again supplied that no further collection/foreclosure action would take place." However, the letter itself contradicts this allegation since it does not make any promises regarding what might occur with respect to the property.

23

Because the SAC fails to identify any promise that was made by the defendants that could support the relief that Pedery-Edwards requests based on her theory of promissory estoppel, the trial court properly sustained the defendants' demurrer to the tenth identified cause of action.

11. *Eleventh cause of action for breach of the implied covenant of good faith and fair dealing*

In her eleventh cause of action, Pedery-Edwards alleges that there are three relevant contracts at issue, which she identifies as: "The note. The deed. The agreement to work toward a modification." She further alleges that each of these contracts includes an implied covenant of good faith and fair dealing, and that the defendants breached this implied covenant by their conduct as alleged in "paragraphs 6 through 74" of the SAC. Paragraphs 6 through 74 of the SAC detail Pedery-Edwards's allegations concerning the events that led up to the trustee's sale of her property.

"The covenant of good faith and fair dealing is imposed upon each party to a contract. [Citation.] This fundamental covenant prevents the contracting parties from taking actions that will deprive another party of the benefits of the agreement. [Citation.] The covenant also requires each party to do everything the contract presupposes the party will do to accomplish the agreement's purposes." (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 524 (*Jenkins*).)

" 'It is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract.' [Citation.] 'Because contracts differ, the nature and extent of the duties owed under the implied

24

covenant are also variable and "will depend on the contractual purposes." [Citation.]'
[Citation.] Thus, it is well settled the implied covenant does not extend so far as to
impose enforceable duties that are beyond the scope of the contract, nor does the
covenant prohibit actions that are expressly authorized by the contract's terms." (*Jenkins*,
*supra*, 216 Cal.App.4th at pp. 524-525.)

"A party's breach of the implied covenant of good faith and fair dealing gives rise
to a contract claim. " (*Jenkins*, *supra*, 216 Cal.App.4th at p. 525.) "Importantly, it is also
well settled '[t]he prerequisite for any action for breach of the implied covenant of good
faith and fair dealing is the existence of a contractual relationship between the parties,
since the covenant is an implied term in the contract.' [Citation.] 'Without a contractual
underpinning, there is no independent claim for breach of the implied covenant.'
[Citation.]" (*Ibid.*)

Although Pedery-Edwards purports to identify three "contracts" that form the basis
of her claim for breach of the implied covenant of good faith and fair dealing, she fails to
include a written copy of any of these contracts or even to allege the terms of these
contracts.[9] Because " 'the scope of conduct prohibited by the covenant of good faith is

---

[9]     With respect to the alleged contract Pedery-Edwards identifies as "[t]he agreement
to work toward a modification," Pedery-Edwards fails to allege that a written contract to
this effect exists and fails to identify the specific terms of any such contract. Pedery-
Edwards's factual allegations as to what various employees at Chase told her at different
times do not establish the existence of such a contract. In other words, apart from
Pedery-Edwards's conclusory allegation that there was a contract between the parties to
"work toward a modification," there are no other allegations identifying the parties who
may have entered into such a contract, the alleged date on which the contract was entered
into, or what the terms of this alleged contract were.

25

circumscribed by the purposes and *express terms* of the contract ' [citation]" (*Jenkins*, *supra*, 216 Cal.App.4th at p. 524, italics added), it is impossible to assess whether a party has breached the implied covenant of good faith and fair dealing with respect to a contract where the party alleging breach fails to allege the terms of the underlying contract.  Given the absence of any allegations regarding the terms of the contracts on which Pedery-Edwards relies, the SAC fails to state a claim for breach of the implied covenant of good faith and fair dealing based on the identified contracts.  The trial court thus properly sustained the defendants' demurrer to the eleventh cause of action for breach of the implied covenant of good faith and fair dealing.

12.     *Twelfth cause of action for invasion of privacy*

Pedery-Edwards's final claim involves a cause of action for invasion of privacy.  A plaintiff asserting such a claim must allege that she possessed a protected privacy interest, that she had a reasonable expectation of privacy in the circumstances, and that the defendant engaged in conduct constituting a serious invasion of privacy.  (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 39-40.)  Invasions of privacy "must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right."  (*Id*. at p. 37.)

Pedery-Edwards alleges that the defendants invaded her privacy by requesting the names, addresses, and social security numbers of her children, and that the defendants falsely represented that if Pedery-Edwards provided this information, her children would be considered in "determining eligibility for a modification."  Pedery-Edwards fails to allege that she provided this information, and thus, that anyone's privacy was invaded by

26

the request. Further, Pedery-Edwards does not allege that defendants improperly obtained any of her *own* private information.

Pedery-Edwards also alleges that the defendants invaded her privacy by "enter[ing] upon her property and post[ing] 'Please call notices' on her front door." Such allegations simply do not constitute an "egregious breach of the social norms underlying the privacy right" (*Hill*, *supra*, 7 Cal.4th at p. 37), as a matter of law.

The trial court properly sustained the defendants' demurrer to Pedery-Edwards's twelfth cause of action.

13. *The demurrer was properly sustained without leave to amend*

Pedery-Edwards has attempted to properly plead a cause of action three times, with no success. Despite having been provided with the opportunity to explain how she could cure the flaws in her SAC on appeal, Pedery-Edwards has yet to articulate how she may be able to state a valid cause of action against the defendants. Pedery-Edwards has thus failed to meet her burden to demonstrate that the defects in her SAC could be cured (see *Blank, supra,* 39 Cal.3d at p. 318 [burden of proving reasonable possibility of curing defects is on the plaintiff]). We conclude that the trial court did not abuse its discretion in sustaining Chase's demurrer without leave to amend.

27

IV.

DISPOSITION

The judgment is affirmed.

_____

AARON, J.

WE CONCUR:


_____

BENKE, Acting P. J.


_____

IRION, J.