Filed 9/4/24  Goldshteyn v. Epiq Global CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GENNADIY GOLDSHTEYN,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>EPIQ GLOBAL,<br><br>Defendant and Respondent. | B333210<br><br>Los Angeles County<br>Super. Ct. No.<br>23SMCV01169 |

APPEAL from a judgment of dismissal of the Superior Court of Los Angeles County, Michael E. Whitaker, Judge. Affirmed.

Gennadiy Goldshteyn, in pro. per., for Plaintiff and Appellant.

Ogletree, Deakins, Nash, Smoak & Stewart, Ryan Takeshi Chuman and Johnnie A. James for Defendant and Respondent.

————————————

Plaintiff Gennadiy Goldshteyn appeals in propria persona from a judgment of dismissal entered in favor of defendant Epiq Global (Epiq) after the trial court sustained Epiq's demurrer to plaintiff's form complaint without leave to amend. We affirm.

## BACKGROUND

### 1. *Facts and procedural history disclosed by the appellate record*

On March 17, 2023, plaintiff, representing himself, filed a Judicial Council form complaint for breach of contract against "Epiq Company." The form notes "each complaint must have one or more causes of action attached" and provides a choice of causes of action for the plaintiff to check. Plaintiff checked "Other" and specified "Breach of Class Action" for his attached cause of action. Under the prayer for relief section of the form, plaintiff checked (1) the box for "damages of" and wrote in "$26,000," and (2) the box for "other" and wrote in "misleading and violating settlement." For the attached breach of contract cause of action, plaintiff wrote "Class Action" in the form template's blanks to add allegations for each element of a breach of contract claim, as depicted in the following screenshot of the complaint:

**CAUSE OF ACTION—Breach of Contract**

_____
(number)

ATTACHMENT TO ☐ Complaint ☐ Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

BC-1. Plaintiff *(name):* Gennadiy Goldshteyn

alleges that on or about *(date):*

a ☐ written ☐ oral ☒ other *(specify):* Class Action

agreement was made between *(name parties to agreement):*

☐ A copy of the agreement is attached as Exhibit A, or

☒ The essential terms of the agreement ☐ are stated in Attachment BC-1 ☒ are as follows *(specify):*

Class Action

BC-2. On or about *(dates):*

defendant breached the agreement by ☐ the acts specified in Attachment BC-2 ☐ the following acts *(specify):* Class Action

BC-3. Plaintiff has performed all obligations to defendant except those obligations plaintiff was prevented or excused from performing.

BC-4. Plaintiff suffered damages legally (proximately) caused by defendant's breach of the agreement ☐ as stated in Attachment BC-4 ☒ as follows *(specify):* Class Action

According to his declaration filed in support of Epiq's demurrer, Epiq's attorney Ryan T. Chuman called the number listed on plaintiff's complaint and left him a voicemail explaining Epiq intended to file a demurrer based on defects that appeared on the face of the form complaint. Chuman declared he specifically told plaintiff in the voicemail that his complaint failed to assert any factual allegations to support a cause of action, and a class action was "a legal procedural mechanism," not a cause of action.

Chuman memorialized his voicemail in a letter dated July 10, 2023. He attached a copy to his declaration. His office emailed the letter to "gagold@iname.com," the email address plaintiff listed on his complaint. That same day, counsel also had First Legal deliver the letter to the address listed on plaintiff's complaint—an apartment in West Hollywood.

3

The messenger's affidavit of due diligence states he knocked on plaintiff's door and "left documents at the door" when there was no answer. Chuman also directly emailed plaintiff at the above email address that evening about Epiq's intent to file a demurrer. He included his cell phone number and invited plaintiff to call him. Both the letter and the email asked plaintiff to "advise" if he would amend his complaint "to include a cause of action with specific allegations," and informed him Epiq would "have no choice" but to file the demurrer if Chuman did not hear from plaintiff by the end of the day on July 12.

Plaintiff did not respond to counsel's email or call him by July 12. Accordingly, on July 17, 2023, Epiq, through counsel, filed a notice of demurrer and demurrer to plaintiff's complaint under Code of Civil Procedure section 430.10, subdivisions (e) and (f).[1] The notice stated the demurrer would be heard on August 18, 2023, in Department 207 at the Beverly Hills courthouse.

The proofs of service for the combined notice of demurrer, demurrer, and memorandum of points and authorities, and Chuman's concurrently filed declaration and exhibits, indicate both sets of documents were mailed to plaintiff on July 17, 2023, at the address listed on his complaint. The proofs of service indicate the documents also were emailed to plaintiff at "gagold@ename.com."[2]

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

[2]     We cannot tell whether the documents were emailed to that incorrect email address or whether the proofs of service contained a typographical error, inserting "e" instead of "i" before "name." We assume the former for purposes of this appeal.

4

On July 17, 2023, the court served a notice of case reassignment and order on all parties reassigning plaintiff's action to a new judge, but in the same department and courthouse.[3]

Plaintiff did not file an opposition to Epiq's demurrer. On August 11, 2023, Epiq filed a notice of non-opposition. Epiq served that notice by mail to the address listed on plaintiff's complaint. The proof of service states the notice also was served by email to the "gagold@ename.com" address.

Epiq's counsel appeared at the scheduled August 18, 2023, 8:30 a.m. hearing through LACourtConnect. The court posted on its website its tentative ruling sustaining Epiq's demurrer without leave to amend. The court ruled plaintiff's complaint was both uncertain and failed to state a cause of action under section 430.10, subdivisions (e) and (f), as—among other things—plaintiff did not allege any information about the alleged agreement or Epiq's conduct that allegedly breached the purported agreement. As plaintiff did not file an opposition, the court found he had failed to meet his burden to demonstrate he successfully could amend the complaint. Plaintiff did not appear at the hearing. The court therefore adopted its tentative ruling as the final order of the court.

On August 21, 2023, Epiq served notice of the court's ruling by mail and email—again, at the address plaintiff listed on his

---

[3] The court's certificate of mailing misspells the name of plaintiff's street by one letter but otherwise matches the address listed on plaintiff's complaint. Plaintiff does not contend he did not receive the court's notice. In any event, plaintiff's receipt of the notice of reassignment has no bearing on the issues raised in his appeal.

complaint and the incorrect gagold@ename.com email address. On August 31, 2023, Epiq served plaintiff—by those same means —with its proposed order entering judgment against plaintiff. On September 11, 2023, the court entered judgment in favor of Epiq and against plaintiff based on its order sustaining Epiq's demurrer to plaintiff's complaint without leave to amend. That same day, the court mailed its notice of entry of judgment to the parties.[4]

On September 26, 2023, plaintiff filed a notice of appeal from the  judgment.  He served Epiq and its counsel by mail on October 2, 2023.

2.      *Plaintiff's additional facts not part of the record*

Plaintiff includes a slew of facts in his opening and reply briefs—not part of the appellate record—that he describes as "[e]vents before the lawsuit was filed that caused the lawsuit." He asserts Morgan Stanley Smith Barney LLC (Morgan Stanley) was involved in a class action lawsuit—the Morgan Stanley Data Security Litigation—after it compromised the personal information of its customers due to negligent internal data security practices (the Morgan Stanley action).  Morgan Stanley entered into a class action "data security settlement," and Epiq was appointed to provide notice and claims administration. Plaintiff asserts he received, filled out, and returned a settlement claim form.  He then began receiving emails from Epiq reminding him he was eligible to receive $100 as part of the settlement but had not yet claimed his payment.  The sample email plaintiff

---

[4]      The court's certificate of mailing again misspells the name of plaintiff's street by one letter.  In his opening brief, plaintiff states he received the notice of judgment and certificate of mailing.

describes also stated he would be unable to claim his award electronically after January 23, 2023, and provided methods for plaintiff to contact Epiq by phone, email, and mail.

Plaintiff asserts he emailed the settlement administrator, the "Epiq Project Director," and appointed class counsel, asking for reimbursement of his expenses and attorney fees identified in documentation he had sent the settlement administrator. Class counsel apparently replied to inform plaintiff the claims administrator had determined the documentation he submitted was insufficient for payment and to direct further concerns to the claims administrator. Plaintiff stated he had paid $7,500 to a lawyer and was asking for a settlement payment of "about $8,000."

Epiq apparently again responded to plaintiff by email, informing him he had been mailed a notice of defective claim on February 8, 2023, and the invoice he sent in response had insufficient detail of the services provided and did not include proof of payment. The email also apparently stated Epiq was able to substantiate only plaintiff's claim for four hours of lost time, which was paid out under the settlement at $25 an hour for a total of $100. As plaintiff did not accept his "digital EpiqPay payment," Epiq was mailing a check to plaintiff that day at the address listed on his claim form.

Plaintiff reproduces in his brief these and other email communications he had with Epiq, class counsel, and the Epiq Project Director, about his settlement claim and dispute with Epiq over what he was owed under the class action settlement. They are part of his request for judicial notice that we discuss below.

Plaintiff also includes new facts in his recitation of the relevant procedural history. Plaintiff states he filed his complaint against Epiq because it "violated Morgan Stanley's agreement to reimburse attorneys' fees." He states he was not informed of the demurrer hearing, apparently because he did not receive "mail deliveries" from Epiq's counsel, First Legal, or the court. Plaintiff's brief includes a purported copy of a photograph of his neighbor's apartment door with a handwritten sign in block letters taped to it that reads, "Attention: Donation Center Agent [¶] Please Pick Up the Supply By the Door," and a copy of a photograph of the same door with several boxes stacked in front of it. (The photographs also are part of plaintiff's request for judicial notice.)

## DISCUSSION

### 1. *Plaintiff's request for judicial notice*

We first address plaintiff's request for judicial notice, filed in advance of his opening brief. Plaintiff asks us to "correct[ ] . . . the record on appeal" to include (1) copies of the photographs of his neighbor's door with the donation area note and boxes in front of it; (2) what appear to be retyped or copied and pasted email communications from Chuman to plaintiff, Chuman's office to plaintiff, between plaintiff and First Legal, and an email plaintiff sent Chuman in October 2023 asking for proof he mailed and emailed the demurrer hearing date to plaintiff; (3) various email communications between plaintiff and the Morgan Stanley Data Security Settlement Administrator (i.e., Epiq), class counsel, and the Epiq Project Director; and (4) what purports to be a reproduction of a portion of class counsel's declaration filed in the Morgan Stanley action in support of the motion for approval of the class action settlement, as well as purportedly

8

reproduced excerpts from other documents filed in that case concerning the settlement.[5]

Plaintiff declares that, after he received the Clerk's Transcript, he "found that important information about the real state of affairs was missing.  Therefore, I want to present arguments and documents to clarify the real situation."  He asks us to "correct[ ]" the appellate record by including "the arguments and documents listed in" his request for judicial notice.

First, none of the information included in plaintiff's request for judicial notice was before the trial court.  Thus, including plaintiff's exhibits in the Clerk's Transcript would not *correct* the appellate record.  Second, although we may take judicial notice of matters that were not before the trial court, we generally will not do so absent "exceptional circumstances." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3; *Weiss v. City of Del Mar* (2019) 39 Cal.App.5th 609, 625.)  No such exceptional circumstances exist here. Plaintiff was aware of his email communications with Epiq, as well as the Morgan Stanley class action settlement, when he filed his complaint but did not include those allegations in it. Nor did he bring that information—or the photographs or his email communications with Epiq's counsel and First Legal— to the trial court's attention in an opposition to Epiq's demurrer, at the demurrer hearing, or in a motion for relief from the dismissal under section 473, which we discuss below. We are cognizant plaintiff is a self-represented individual.

---

[5]     According to plaintiff's request for judicial notice, the Morgan Stanley action was filed in the United States District Court, Southern District of New York, case number 1:20-cv-05914-AT.

Self-representation, however, "is not a ground for exceptionally lenient treatment. Except when a particular rule provides otherwise, the rules of civil procedure must apply equally to parties represented by counsel and those who forgo attorney representation." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984–985.) Plaintiff's self-represented status thus does not constitute an exceptional circumstance.

In any event, plaintiff's documents are not properly the subject of judicial notice. We may take judicial notice of records of another state or federal court. (Evid. Code, § 452, subd. (d).) Plaintiff, however, asks us to take judicial notice of what apparently is text he has copied from various documents purportedly filed in connection with the Morgan Stanley class action settlement—not file-stamped copies of the documents. (See *Ross v. Creel Printing & Publishing Co.* (2002) 100 Cal.App.4th 736, 743 (*Ross*) [declining to take judicial notice of uncertified, out-of-state complaint not produced under subpoena]; *J.W. v. Watchtower Bible & Tract Society of New York, Inc.* (2018) 29 Cal.App.5th 1142, 1172–1173 [judicial notice of documents filed in court denied where they were not file stamped by the court].) We have no way of knowing whether the reproduced excerpts are accurate and will not take judicial notice of them.

Moreover, even if were to take judicial notice of these purported court records, we would not consider the facts asserted in them in deciding plaintiff's appeal. (*Doers v. Golden Gate Bridge, etc.* (1979) 23 Cal.3d 180, 184, fn. 1 ["Although a reviewing court may take judicial notice of matters not before the trial court, including records of another court (Evid. Code, §§ 459, subd. (a), 452, subd. (d)), the reviewing court need not give effect to such evidence."], overruled in part on another

10

ground in *Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562.) Plaintiff has not explained how the excerpts from the documents filed in the Morgan Stanley action demonstrate the existence of a contract between plaintiff and Epiq. In any event, the truth of matters asserted in those court documents is not subject to judicial notice. (See *Guarantee Forklift, Inc. v. Capacity of Texas, Inc.* (2017) 11 Cal.App.5th 1066, 1075 [appellate court may take judicial notice of court records but generally does "not take judicial notice of the truth of the matter asserted in such documents, and may decline to take judicial notice of matters not relevant to dispositive issues on appeal"]; *Ross, supra,* 100 Cal.App.4th at p. 743 [even if court record was properly certified, appellate court would take judicial notice only of its existence, not the truth of its contents].)

As for the photographs and various email communications, they are not matters of common knowledge not reasonably the subject of dispute nor "capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." (Evid. Code, § 452, subds. (g), (h).) Thus they are not properly the subject of judicial notice.

Accordingly, we deny plaintiff's request for judicial notice in its entirety.

2.    *Standards of review*

In reviewing a judgment of dismissal after a trial court has sustained a demurrer, we "examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can

11

be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

3.     ***On its face, plaintiff's complaint is uncertain and fails to state a cause of action***

Plaintiff's form breach of contract complaint is devoid of factual allegations and thus is fatally flawed.  As the trial court explained, it purports to "bring[ ] the cause of action for 'breach of class action' and prays for 'damages of:  $26,000' and 'misleading and violating the settlement[.]' "  The complaint alleges unspecified parties entered into a " 'Class Action' agreement," on an unspecified date, "the essential terms of which are 'Class Action[.]' "  And, on an unspecified date, Epiq "breached the agreement by 'Class Action[.]' "  The damages Epiq caused plaintiff by breaching the agreement also are " 'Class Action.' "

As the trial court found, not only are these allegations so vague that Epiq could not "reasonably determine what issues must be admitted or denied," but they also fail to allege the essential elements of a breach of contract action.  (See, e.g., *Piedmont Capital Management, L.L.C. v. McElfish* (2023) 94 Cal.App.5th 961, 968 (*Piedmont Capital*) [breach of contract claim has four elements:  existence of a contract, plaintiff's performance or excuse for nonperformance, defendant's breach, and resulting damages].)  Plaintiff neither pleaded the legal effect nor the precise terms of the purported class action agreement.  Nor did plaintiff—as the trial court noted—allege the parties to the agreement, whether plaintiff performed under the agreement, or what Epiq allegedly did or didn't do to breach

12

that agreement.  Accordingly, the trial court properly sustained Epiq's demurrer on both the ground the complaint was uncertain under section 430.10, subdivision (f), and failed to state facts sufficient to constitute a cause of action under section 430.10, subdivision (e).[6]

## 4.      *Plaintiff has failed to show the court erred in sustaining the demurrer without leave to amend*

Epiq argues plaintiff has forfeited his challenge to the court's ruling because he neither opposed Epiq's demurrer nor appeared at the demurrer hearing.  Generally, the failure to oppose a motion and to appear at the motion hearing forfeits subsequent challenges to the motion ruling.  (*Bell v. American Title Ins. Co.* (1991) 226 Cal.App.3d 1589, 1602.)  We nevertheless consider plaintiff's challenge to the court's order and judgment of dismissal.

Plaintiff, however, is bound to follow the most fundamental rule of appellate review:  "A judgment or order of the lower court is presumed correct.  All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." (*Denham v. Superior Court of Los Angeles County* (1970) 2 Cal.3d 557, 564; see also *Simms v. Bear Valley Community Healthcare Dist.* (2022) 80 Cal.App.5th 391, 406, fn. 5 [self-represented party is

---

[6]      Plaintiff also seems to contend it was Epiq's counsel's duty to disclose the existence of plaintiff's communications with Epiq about his class settlement claims at the demurrer hearing. Plaintiff is under the misimpression that Epiq's counsel owed plaintiff a duty to articulate the factual basis for plaintiff's claims against Epiq.  That was plaintiff's burden, not Epiq's counsel's.

13

"held to the same standard of knowledge of law and procedure as an attorney"].)

Plaintiff appears to argue the new facts he has alleged in his briefs are sufficient to constitute a cause of action against Epiq; the dismissal should be reversed because the court erred in finding Epiq's counsel's attempts to meet and confer with plaintiff were adequate; plaintiff never received notice of the demurrer hearing date; and plaintiff should be granted relief under section 473. We address each of these arguments.

   a.    *Plaintiff has not demonstrated he can amend*
          *his complaint to state a valid cause of action*

It is the plaintiff's " 'burden to establish how the complaint can be amended to state a valid cause of action.' " (*Jensen v. The Home Depot, Inc.* (2018) 24 Cal.App.5th 92, 97 (*Jensen*).) As plaintiff did not make any showing in the trial court as to how he would amend his complaint—given he did not appear at the hearing or file an opposition—the court did not abuse its discretion in sustaining the demurrer without leave to amend. (*Ibid.*)

Nevertheless, a plaintiff may ask for leave to amend a complaint for the first time on appeal. (*Jensen, supra*, 24 Cal.App.5th at p. 97.) The burden of demonstrating a reasonable possibility of amendment remains with the plaintiff. On appeal, a plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.) We will not rewrite a complaint to include facts a plaintiff "might allege if given the opportunity." (*Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1153.)

14

Plaintiff has not shown how the facts he alleges in his briefs demonstrate he can amend his complaint successfully. Even if we were to take judicial notice of the Morgan Stanley court documents, photographs, and email communications plaintiff apparently contends support his complaint, they do not make clear plaintiff can allege a viable breach of contract cause of action against Epiq. From what we can gather, plaintiff argues that, because the Morgan Stanley class action settlement included its payment of attorney fees and costs, Epiq breached that agreement by not paying plaintiff his claim for attorney fees and costs. Plaintiff has not explained, however, how Morgan Stanley's obligations under the class action settlement, or the email communications between plaintiff and Epiq about plaintiff's claims under the settlement, demonstrate a contract existed between plaintiff and Epiq. Nor has plaintiff set forth the terms of that purported contract, or their legal effect, or even how Epiq breached those unstated terms—essential elements of a breach of contract cause of action. (*Piedmont Capital, supra*, 94 Cal.App.5th at p. 968; see also *Construction Protective Services, Inc. v. TIG Specialty Ins. Co.* (2002) 29 Cal.4th 189, 198–199 [plaintiff may plead legal effect of contract rather than its precise language].)

Indeed, plaintiff cites no legal authority as to how those alleged facts satisfy the elements of a breach of contract cause of action—or some other cause of action—against Epiq. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."].) Plaintiff thus has failed to

15

satisfy his burden on appeal to show he reasonably can amend his complaint.

  b.  *The court properly found Epiq's counsel satisfied his meet and confer obligations*

  Section 430.41, subdivision (a) requires that, before a party may file a demurrer, the demurring party must "meet and confer in person [or] by telephone . . . with the party who filed the pleading that is subject to demurrer for the purpose of determining whether an agreement can be reached that would resolve the objections to be raised in the demurrer." The trial court concluded Epiq's counsel attempted to meet and confer with plaintiff "with sufficient diligence to satisfy the statutory meet and confer requirement" based on the voicemail he left plaintiff, the letter he emailed and attempted to deliver personally to plaintiff, and his second email to plaintiff with his contact information.

  Plaintiff does not argue he did not receive Chuman's voicemail, emailed letter, or second email, or that the phone number, email address, or physical address Chuman used were incorrect. Indeed, plaintiff admits he received three emails from Chuman, including one where Chuman introduced himself as Epiq's counsel and explained he was authorized to accept service of plaintiff's complaint.[7]

  Rather, plaintiff seems to contend the court erred in finding Epiq satisfied section 430.41 because Epiq did not formally notify plaintiff Chuman was its attorney. Plaintiff

---

[7] Plaintiff reproduced that email, dated June 7, 2023, in his reply brief. It is not part of the appellate record. The other two emails plaintiff admits he received are those attached to Chuman's declaration in support of Epiq's demurrer.

16

asserts he "refused to contact" Chuman because "he was not presented" to plaintiff "as a party officially representing" Epiq. He argues Chuman "violated" section 1014 by failing to give plaintiff "any written notice of his appearance or representation."

Plaintiff misreads section 1014. That section governs what constitutes a defendant's appearance in an action to trigger the defendant's, or its attorney's, entitlement to notice in the proceedings. (§ 1014.) Under the statute, a defendant "appears" when the defendant files an answer, demurrer, or other specified motions; *or* when the defendant "gives the plaintiff written notice of appearance"; *or* "when an attorney gives notice of appearance for the defendant." (*Ibid.*) Nothing in the statute requires the defendant also to give the plaintiff a separate formal, written notice identifying its attorney.

Here, Chuman notified plaintiff more than once that he represented Epiq in this matter and plaintiff should contact him. That plaintiff did not believe Chuman "officially represent[ed]" Epiq is no excuse for plaintiff's inaction, as Epiq notes, nor does it demonstrate the court erred.

c. *The record shows Epiq properly served plaintiff*

Plaintiff contends he did not appear at the demurrer hearing because he was not properly notified of the date, requiring the judgment to be reversed. He argues Epiq failed to serve him properly with notice of the demurrer hearing because (1) the email address on the proof of service was incorrect, and (2) he "missed" the mailed documents because they were left in his neighbor's donation space and lost or "improperly delivered."

The proofs of service for Epiq's notice of demurrer, moving papers, and supporting declaration and exhibits show Epiq served plaintiff by mail on July 17, 2023, at the address

17

plaintiff listed on his complaint—the same address plaintiff provided this court.[8]  Plaintiff does not contend that mailing address was incorrect, only that the mailed documents must have been lost among the boxes in the donation area or otherwise misdelivered.  Even if we were to take judicial notice of the photographs plaintiff includes of that area, they do not demonstrate Epiq improperly served plaintiff.

As plaintiff notes, the email address listed on Epiq's proof of service of the notice of demurrer and moving papers is incorrect.  But nothing in the record indicates Epiq was required to serve plaintiff by email as well.  (§ 1010.6, subd. (b)(1) [court may order electronic service on *represented* party], subd. (c)(2) [unrepresented party may consent to electronic service].)  Epiq's counsel apparently did so as a courtesy.

As Epiq served plaintiff by mail more than 21 court days before the noticed August 18, 2023 demurrer hearing, the service of the notice of demurrer and other documents was timely as a matter of law.  (See § 1005, subd. (b) [moving papers must be served 16 court days before hearing date plus an additional 5 days if served by mail].)  Accordingly, the appellate record does not support plaintiff's assertion that he was not properly served.

---

[8]   Epiq incorrectly states the proof of service shows it personally served the moving papers at plaintiff's address.  The proof of service cited in the appellate record checks the box "BY MAIL" for the method of service.  It states an individual from Epiq's counsel's office placed a copy of the documents in an envelope and "placed the envelope for collection and mailing, following our ordinary business practices."

18

d.     *Plaintiff has forfeited his argument that the judgment should be vacated under section 473*

For the first time on appeal, plaintiff appears to contend his "missed" receipt of the mailed notice of demurrer hearing constitutes "mistake, inadvertence, surprise, or excusable neglect," entitling him to have the judgment of dismissal set aside under section 473, subdivision (b).  The problem with plaintiff's argument is that he did not seek relief under section 473 in the trial court.  That statute authorizes the court, on a *party's application*, to relieve the party "from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."  (§ 473, subd. (b).)

If plaintiff believed he did not receive the mailed service copy due to its mistaken delivery to his neighbor's donation pile, or due to his inadvertence or excusable neglect, his recourse was to file a motion with the trial court asking for relief from the order sustaining the demurrer without leave to amend and the judgment of dismissal under section 473, subdivision (b).  As plaintiff never did so, he has forfeited appellate review of the issue.  (See, e.g., *In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 117 ["It is well established that issues or theories not properly raised or presented in the trial court may not be asserted on appeal, and will not be considered by an appellate tribunal."]; *Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1038 ["It is axiomatic that arguments not raised in the trial court are forfeited on appeal."].)  We thus do not consider whether plaintiff was entitled to relief under section 473.

19

Accordingly, plaintiff has failed to meet his burden to show the court erred in sustaining the demurrer without leave to amend and in dismissing his case.

## DISPOSITION

The judgment of dismissal is affirmed. The parties shall bear their respective costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:



EDMON, P. J.



ADAMS, J.